E. W. BUCKLEY *vs.* MAXIME BEAULIEU et al.

Androscoggin.    Opinion March 3, 1908.

*Search and Seizure Warrants.    Constitutional  Guaranty.    Unreasonable  Searches.*
*Unnecessary Damage.    Liability of Officers.    Constitution of Maine,*
*Article 1, section 5.*

1.  The constitutional guaranty that "the people shall be secure in their
    persons, houses, papers and  possessions from  all  unreasonable  searches
    and seizures," is a restraint upon officers executing a search warrant as
    well as upon magistrates issuing it.

2.  While officers in executing a warrant to search a dwelling house occupied
    by a family, may, and  should, search  thoroughly in every part of  the
    house where  there is reason  to  believe  the object searched for may be
    found, they should also  be considerate of the comfort and  convenience of
    the occupants and be careful to injure the house or furniture no more than
    reasonably necessary.

3.  Where officers searching a dwelling house for intoxicating liquors have
    no reason to  believe that such  liquors are concealed within  the walls or
    partitions of the house, but desire to ascertain whether any pipes  leading
    to some receptacle for liquors, are concealed there, their  sounding  and
    even probing of  the walls and  partitions for that  purpose should  be done
    with as little damage as possible.

4.  Where officers for  the purpose only of ascertaining whether such  pipes
    are concealed within  the walls and  partitions of a dwelling, make  use of
    a dwelling, make use of  an axe, a pickaxe and  crowbar, and  tear out the
    paper, plaster and  laths entirely around  the walls of  every room on  the
    first floor of a dwelling house for a width generally of from two to four feet,
    leaving the debris on  the floors and  carpets of  the rooms, they act
    unreasonably, do unnecessary damage, and thereby exceed their authority
    and become liable to the owner therefor.

On exceptions and  motion by plaintiff.    Exceptions not consid-
ered.    Motion sustained.

Action of trespass quare clausum for an alleged breaking and
entering of the plaintiff's dwelling house in Lewiston.    The defend-
ants were deputy enforcement commissioners duly appointed under
the  provisions of  chapter 92,  Public  Laws,  1905,  known  as the

"Sturgis Law," and at the time of alleged trespass, by virtue of a warrant therefor duly issued by the Municipal Court of Lewiston, were engaged in searching the plaintiff's dwelling house for intoxicating liquors alleged to be concealed therein. The plaintiff is a resident of New York City and the dwelling house, at the time of the alleged trespass, was occupied by his brother Timothy F. Buckley as a tenant at will.

The declaration in the plaintiff's writ is as follows:

"In a plea of trespass for that the said defendants at Lewiston, on the fifth day of August, 1906, with force and arms broke and entered the plaintiff's close in said Lewiston and then and there with pick-axe, bars, and other instruments ruined and destroyed to a large extent the plaintiff's building, tore down the walls of the house, cut, destroyed and defaced the walls, floors and other portions of the plaintiff's house against the law of the land and against the will of the plaintiff and the plaintiff further alleges that these acts were done by the defendants willfully, and wantonly, to the damage of the said plaintiff, (as he says) the sum of one thousand dollars."

Plea, the general issue, with a brief statement as follows:

"That at the time of doing the acts complained of in plaintiff's writ, to wit, on August 5th, A. D. 1906, the defendants and one A. B. Howard of Auburn in this County, were duly and legally appointed and qualified deputy enforcement commissioners of the State of Maine, and were acting as such; that the said A. B. Howard was then armed with a warrant legally issued from the Municipal Court of the City of Lewiston, in said County of Androscoggin, a court having general jurisdiction over the subject matter, directed to the Sheriff of our said County of Androscoggin, his Deputies, the Constables of the City of Lewiston, and of the several towns in said County, and the enforcement commissioners and deputy enforcement commissioners of the State of Maine, commanding them, or either of them, to enter the dwelling house and its appurtenances occupied by Timothy Buckley, and situated on the west side of Grove street in said Lewiston, being the same premises

described in plaintiff's writ and declaration and therein to search for intoxicating liquors alleged in said warrant to be then on the said fifth day of August aforesaid, there unlawfully kept and deposited by said Buckley for illegal sale in the State of Maine; that said warrant was duly issued from said court on and bearing the date of said fifth day of August, aforesaid, bearing its seal and the teste of the judge thereof, and over the signature of A. K. P. Knowlton, its then duly appointed and qualified acting clerk; that said Howard was present and armed with and acting under said warrant, and directing said search in said capacity as deputy enforcement commissioner, during all of the acts complained of in plaintiff's writ and declaration; that said Beaulieu and said Stevens, in their said capacity as deputy enforcement commissioners, assisted in said search as aids of said Howard, and under the directions contained in said warrant; that all of the acts complained of in plaintiff's said writ and declaration, which these defendants did at all were done in the execution of said warrant, in the presence and under the direction of the person, to wit, of said Howard, who was then and all of the time there personally present and armed with the same, and that neither of said defendants did any act which was not reasonable and necessary in the execution of said warrant; and that the said Howard and the said Beaulieu and Stevens, acting in their said several capacities did all things required of them by said warrant according to the tenor thereof.

Tried at the January term, 1907, Supreme Judicial Court, Androscoggin County. Verdicts for defendants. The plaintiff then filed a general motion for a new trial, and also during the trial excepted to certain rulings made by the presiding Justice. The exceptions were not considered by the Law Court.

The material facts are stated in the opinion.

*McGillicuddy & Morey*, for plaintiff.

*Newell & Skelton and J. G. Chabot*, for defendants.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, KING, JJ.

EMERY, C. J.   The decisive question in this case is whether the defendants in their execution of a warrant to search the plaintiff's dwelling house for intoxicating liquors went so far as to violate the constitutional guaranty that "the people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures."   This court in *State* v. *Guthrie*, 90 Maine, 448, in considering the duty of an officer entrusted with a search warrant used the following language, viz :   "It is a sharp and heavy police weapon to be used most carefully lest it wound the security or liberty of the citizen.   It was unknown to the early common law and came into use almost unnoticed in the troublous times of English history.   Lord Coke denied its legality, but finally the courts and parliament, recognizing its great efficiency, contented themselves with carefully restricting and controlling its use.   *Entick* v. *Carrington*, 19 Howell's State Trials, 1030.   The danger of its abuse has been so clearly apprehended in this country that constitutional barriers have been erected against it."   This constitutional limitation upon its use is to be observed by the officer executing the warrant, as well as by the magistrate issuing it.

Whether the conduct of the officer in a given case was reasonable or unreasonable must be determined by all the circumstances of that case.   No definite line can be drawn.   The division is rather by a zone within which reasoning men might reasonably differ, but outside of which there would be a general concurrence of reasoning, thinking men.   The general principle, however, is that while the officers should search thoroughly in every part of the described premises where there is any likelihood that the object searched for may be found, they should also be considerate of the comfort and convenience of the occupants, should mar the premises themselves as little as possible, and should carefully replace so far as practicable anything they find it necessary to remove.   As said in Tiedman on The Police Power, vol. 2, page 787 :   "Under a constitutional government, of which the liberty of the citizen is the cornerstone, the privacy of one's dwelling is rarely ever invaded, and then only in

extreme cases of public necessity and under such limitations as will serve to protect the citizen from any unusual disturbance of his home life."

In the case at bar the following facts appear from the testimony of the defendant officers themselves : They had a warrant to search the plaintiff's dwelling house for intoxicating liquors alleged to be unlawfully kept therein by the tenant. From the prior and contemporaneous conduct of the tenant and his wife the officers believed, and had reason to believe, that intoxicating liquors were somewhere in the house. They searched the house "thoroughly," and without hindrance, from attic to cellar inclusive, and even dug into the floor of the cellar. They examined the walls and floor of the cellar and the walls and floors of each room, including the attic, but found no liquors, nor any indications of any receptacles, secret panels or openings, or communications with receptacles, nor any other indications as to where liquors might be hid. They sounded the walls "pretty thoroughly" with hammers, but no such indications were thereby discovered. The officers, nevertheless, insisted to the tenant and his wife that intoxicating liquors were somewhere in the house, and that unless the location was revealed they should break into the walls of the various rooms. The tenant and his wife declared there were no liquors then in the house, the officers having already by a prior search of the stable taken all they had. The officers thereupon, using an axe, pickaxe and crowbar, broke into and tore out a strip from the interior walls of all the rooms below stairs from kitchen to front hall inclusive, entirely round each room, tearing off the paper, plastering and lathing, and dropping the debris upon the floors and carpets. This strip was of varying width, mainly from two to four feet, and was so wide as to require an entire re-papering of the rooms besides the repairs of lathing and plastering. They did all this in the hope of finding, not the liquors, but some pipe or other clue leading to the liquors. The officers then departed, leaving the occupants to remove the torn paper, plaster and broken laths and dust from the carpets and floors of their dwelling, and leaving the plaintiff, the owner, to restore his house and make it again habitable.

Upon these facts we think it clear that the manner and extent of the search in this case were unreasonable and in excess of the officers' authority. Even if under all the circumstances, not believing any liquors to be concealed there, they could lawfully have probed the walls in the hope of finding a pipe or other clue of the existence of which they had found no indications, such probing could have been sufficiently made with some slender probe with comparatively little injury. The destructive use of axe, pickaxe and crowbar for that purpose was unnecessary and unreasonable, and hence unlawful.

It may be conceded that the defendants acted in good faith in the full belief and with reason to believe that the occupant was keeping liquors in the house in violation of law, but that is not a defense. In this civil action against them they are to be judged by their conduct, not by their motives except as to the assessment of damages. Officers must not allow their zeal and beliefs to blind them to the rights of the owners and occupants of the dwelling house they search. Those rights, as well as the interests of the prosecutors, are to be regarded and protected by officers. In this case the tenant was not convict but only accused, and only of a misdemeanor. The owner was not even accused.

However confident the officers were of the guilt of the occupant, the house and its owner were not thereby outlawed.

*Motion sustained.*
*Verdict set aside.*