19719. MOBLEY, superintendent, *et al. v.* JACKSON.

762

*Little & Dickerson,* for plaintiff in error.

*H. L. Jackson, L. E. Laslinger,* contra.

Bell, J. G. A. Jackson, a Confederate veteran, received from the State of Georgia a pension of $125. The money was deposited by him in the First Bank of Cook County, and he received therefor the usual interest-bearing time-certificate. The cashier, in receiving the deposit, knew that it was pension money. The bank failed and was taken possession of by the superintendent of banks, under the banking act of 1919. The pensioner thereafter presented to the judge of the superior court a petition in which he prayed for a rule nisi requiring the superintendent of banks and the liquidating agent to show cause why "said pension should not be declared a superior lien upon any and all funds in the hands of the superintendent," and asking for such other relief as may be reasonable and just. The rule nisi was issued and the parties were duly served. The respondents appeared and demurred to the petition, upon the grounds that it set forth no cause of action, and that the plaintiff had no superior claim upon the funds in the hands of the superintendent. The court overruled the demurrer, and the respondents excepted.

Counsel for the respective parties have filed in this court a stipulation in which the plaintiff in error waives "all technicalities" and all objections to the form of the petition, or to the procedure adopted by the pensioner to obtain an adjudication of his rights, and in which this court is requested to pass upon what we "conceive to be the merits of the case," irrespective of all questions of practice.

Section 1495 of the Penal Code provides as follows: "The pensions of Confederate soldiers, and widows of Confederate soldiers, shall be exempt from garnishment and all other legal process, no matter in whose hands the pension or pensions may be; and no court or ministerial officer in this State shall ever have jurisdiction or authority to issue or enforce any garnishment or other process against the same." This is a restatement, of the provisions of the act of October 14, 1891, entitled "An act to exempt from garnishment and legal process the pensions of Confederate soldiers and the widows of Confederate soldiers." Ga. L. 1890-1, p. 203.

Under a Federal statute upon the same subject it has been held that the exemption protects the fund only while it is in course of transmission to the pensioner, and that after it has once reached his hands, the statute is satisfied and the exemption ceases. McIntosh v. Aubrey, 185 U. S. 122 (22 Sup. Ct. 561, 46 L. ed. 834) ; Johnson v. Elkins, 90 Ky. 163 (13 S. W. 448, 8 L. R. A. 552) ; Bailey v. Bailey, 76 Vt. 264 (56 Atl. 1014, 65 L. R. A. 332, 104 Am. St. R. 935). Our own statute, however, is broader in its scope and requires a different construction.

In view of the motive of the legislature in its enactment, and the probable need of the beneficiaries, the statute is to be given a liberal construction in favor of the pensioner. Powell v. Jennings, 48 N. C. 547, 549 ; Price v. Society for Savings, 64 Conn. 362 (30 Atl. 139, 42 Am. St. R. 198). A deposit in a bank ordinarily creates only the relation of debtor and creditor between the parties, but in none of the Georgia cases applying this rule did the deposit consist of pension money belonging to the depositor. Compare *McGregor* v. *Battle*, 128 *Ga.* 577, 580 (58 S. E. 28, 13 L. R. A. (N. S.) 185) ; *Luthersville Banking Co.* v. *Hopkins*, 12 *Ga. App.* 488 (77 S. E. 589).

Under a statute of the State of New York, providing that a pension granted by the United States for military services is exempt "from seizure for nonpayment of taxes or in any other legal proceeding," the Appellate Division of the Supreme Court of that State held that, where a recipient of a Federal pension, paid to him in the form of a draft, deposited the same in a bank, subject to check, receiving therefor only a deposit slip, the fund was exempt from administration by a receiver of his property. Burgett v.

Fancher, 35 Hun, 647. In that case there was no agreement to pay interest. In another decision by the same court it was held that such a fund would be exempt from seizure by a receiver of the depositor's property, although the bank was to pay interest on the deposit. Stockwell *v.* Nat. Bank of Malone, 36 Hun, 583.

In the decision of these cases the court did not overlook the rule that a deposit of money in a bank usually creates the simple relation of debtor and creditor. A pensioner who deposits his pension in a bank is more than a mere creditor; he is a creditor with a special right created by law for his benefit. The money loses its identity, but the obligation of the bank becomes a substitute impressed with the same character, and the fund may be reclaimed as pension money as against legal process.

In a still later decision, by the Court of Appeals of New York, it was held that where the proceeds of a pension were invested in a home suitable to the needs of the pensioner and his family, the property was exempt under the law of that State. In the decision the court said: "Did the legislature intend to limit the force of their exemption to a pension so long only as it remained an obligation of the government, or consisted of cash in the hands of the pensioner; or did they also intend to protect it after it had been expended in the purchase of articles of property designed to administer to the comfort and support of such pensioner and his family? If the latter was not intended, we must ascribe to the law-makers the absurd intention of granting pensions for the purpose of satisfying claims against pensioners, and not to provide for the care and comfort of invalid or aged soldiers. If the soldier is not protected in the act of exchanging his pension for the necessaries of life, its only effect would be to enable his creditors to take it in satisfaction of their claims. No benefit is conferred if the protection is not extended beyond the possession of the money itself, for its only value consists in its purchasing power, and if the soldier is deprived of that, the pension might as well, so far as he is concerned, have remained ungranted. The plain purpose of the act was to promote the comfort of the soldier; to secure to him the bounty of the government free from the claims of creditors, and to insure him and his family a safe, although modest, maintenance so long as their needs required it. In the case of an exemption of specific articles from levy and sale upon execution, it

seems to be well settled that it extends not only to the protection of such articles while in use or possession, but also to any claim arising out of their conversion by a wrongdoer, or their destruction by fire or otherwise, when insured. Freeman on Executions, § 235. The rule seems to be just and reasonable and within the spirit of the exemption. In the case of the exemption of money, or its equivalent, there has been some controversy in the courts with reference to the extent to which the exemption shall be carried. In such case it is somewhat difficult to lay down a rule in precise terms by which it may be determined in all cases what property is liable and what exempt from levy and seizure upon legal process for the payment of debts, but we entertain no doubt that where the receipts from a pension can be directly traced to the purchase of property, necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt under the provisions of this statute. Where such moneys can be clearly identified and are used in the purchase of necessary articles, or are loaned or invested for the purposes of increase or safety, in such form as to secure their available use for the benefit of the pensioner in time of need, we do not doubt but that they come within the meaning of the statute; but where they have been embarked in trade, commerce or speculation, and become mingled with other funds so as to be incapable of identification or separation, we do not doubt but that the pensioner loses the benefit of the statutory exemption. These propositions, we think, are fully supported by the cases in this and other states." Yates County National Bank v. Carpenter, 119 N. Y. 550 (23 N. E. 1108, 7 L. R. A. 557, 16 Am. St. R. 855).

The present case will be governed, of course, by our own statute, which from the language used is rather extensive in its purport and meaning. This statute has never been construed, but, owing to its similarity to the New York act, the cases cited above from that State are pertinent and persuasive. While there are numerous decisions by the courts of other States upon kindred subjects, there is a lack of harmony in the conclusions reached, and we have found no case directly in point. Both this court and the Supreme Court, however, have dealt with cases analogous to the one now under consideration. In *Payne* v. *Jordan*, 152 *Ga.* 67 (110 S. E. 4), it was held that benefits payable under the war-insurance

act, which provided that they should be exempt from taxation and the claims of all creditors except the United States, would be protected against garnishment and preserved from legal process against the beneficiary instituted by any creditor other than the government itself, although the funds had been received by the beneficiary and deposited in a bank. In *Payne* v. *Jordan*, 36 *Ga. App.* 787 (138 S. E. 262), this court held that, where such funds had been invested by the beneficiary in property, and levied upon under an execution against the owner, the execution might be arrested by an affidavit of illegality invoking the statutory exemption.

The point is made that the fund in controversy has not been seized by garnishment or other process, but we can not agree with this contention. The superintendent of banks is a statutory receiver, and his taking possession of the affairs of an insolvent bank under the provisions of the banking act will constitute legal process within the meaning of the exemption statute, liberally construed. *Bennett* v. *Wheatley*, 154 *Ga.* 591 (115 S. E. 83); *Berrien County Bank* v. *Alexander*, 154 *Ga.* 775 (115 S. E. 648); *Bennett* v. *Green*, 156 *Ga.* 572 (3), 578 (119 S. E. 620); Ga. L. 1919, pp. 135, 154, 155, §§ 1-3, art. vii. The term legal process may imply more than a judicial writ. In a larger sense, "process" is equivalent to procedure, and may include all steps and proceedings in a cause from its commencement to its conclusion. 6 Words & Phrases, 5642; 3 Words & Phrases (2d series), 1243; 23 Am. & Eng. Enc. Law (2d ed.), 160.

It is contended that, since the provisions of the banking act prescribing the order in which the superintendent shall pay the debts of an insolvent bank give no superiority to a claim based upon a deposit of pension money, such a claim should be classified and paid only in accordance with the terms of the act in reference to priorities. It is safe to say that in the enactment of this statute the legislature did not intend to repeal the provisions of the act exempting the pension money of Confederate veterans, which by its express terms protects the pension from all legal process, *no matter in whose hands it may be*. As we have seen above, the pensioner is not an ordinary creditor of the bank. He could claim as any other creditor if he saw fit to do so; but he may assert a reclamation. The superintendent, in honoring such a demand, will not violate the provisions of the banking act in regard to priori-

ties, nor will he be acting thereunder. Otherwise, he would be subjecting the fund to process contrary to the exemption statute. In taking possession of the bank he has necessarily seized the fund, and, having done so, he should release it on a proper demand. Thus, his payment will operate as a restitution of the pension to its owner, as a fund not subject to his administration. It would be a strange rule which exempted the pension from the debts of the pensioner, but subjected it to the debts of another person, as, in the present case, the debts of the bank.

As stated above, the bank received the money on deposit with knowledge that it was pension money, and we are requested not only to decide the case as thus made, but to determine whether the lack of such knowledge on the part of the bank "would make any difference in the classification of the claim." The last question is clearly not presented by the present record, and whatever we might say in regard thereto would be a mere dictum. It would now seem to the writer, however, that the question of such knowledge would be altogether immaterial in a case of this sort, unless a question of estoppel was in some way involved.

What we hold is, that under the facts of this case it was the duty of the superintendent to give effect to the statute by restoring to the claimant the equivalent of his pension, as a fund not subject to administration. This decides the question on the merits as the case has been presented in this court by counsel for the respective parties. Under the stipulation, no question is presented as to the correct legal procedure for asserting the pensioner's rights. While in the petition filed in the court below there was an attempt to claim a prior lien, counsel for plaintiff in error have not sought a reversal of the judgment upon the ground that the petition as thus framed would not support an adjudication sustaining the exemption provided by statute.

Be it further said that this was a friendly lawsuit, and that the superintendent of banks appears to have brought the case to this court not with the view of defeating the plaintiff as to any right which he may have, but for the purpose of ascertaining the duty of the superintendent in like cases.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*