23433. KNIGHT *v.* ADDISON.

DECIDED APRIL 3, 1934.

*N. L. Stapleton,* for plaintiff. *P. Z. Geer,* for defendant.

GUERRY, J. On March 5, 1931, Mrs. Millie Addison executed a note in the sum of thirty dollars, payable to Mrs. J. T. Knight, and secured the note by a mortgage on a certain cow. Mrs. Addison having defaulted in payment of the note, it was foreclosed by Mrs. Knight before a justice of the peace and the mortgage execution was levied by the constable of said court. Mrs. Addison interposed her affidavit of illegality thereto, alleging that the fi. fa. was proceeding illegally for the reason that she "is a widow of a Confederate soldier and as such draws a pension from the State of Georgia, and under the law [Penal Code (1910), § 1495] such money is exempt from garnishment and all other legal proceedings, no matter in whose hands the pension or pensions may be; . . that the cow so levied on was purchased with her pension money, which she received from the State of Georgia, and the entire purchase-price of said cow was paid with said pension money." At the trial of the case in the justice's court Mrs. Knight made a written motion to dismiss the affidavit of illegality, which was sustained. Certiorari was sued out to the superior court and, upon hearing, was sustained and the case remanded to the justice's court for another trial. To this ruling the plaintiff in execution excepted.

It is true, as stated in the case of *Mobley* v. *Jackson,* 171 *Ga.* 436 (156 S. E. 23), that "section 1495 of the Penal Code is to be

given a liberal construction in favor of the pensioner." The specific question passed on in the *Mobley* case, supra, was whether or not a pension of a Confederate soldier which is deposited in a bank, with *knowledge* of the bank that same is pension money, becomes a special lien upon the funds of said bank when the same is in the hands of the banking department for administration. This court in the same case, 40 *Ga. App.* 761 (151 S. E. 522), held that it was the duty of the superintendent of banks, who subsequently took possession of the bank, to restore to such pension depositor the equivalent of his deposit as a fund not subject to administration. On certiorari the Supreme Court overruled the decision of this court and held that § 1495 was not intended to give such soldiers or their widows special liens upon the general funds of a bank for pension money deposited therein. The above was the specific question decided in the *Mobley* case, supra. It is true that in the opinion of the Supreme Court in that case it was said: "So if this pension money had been deposited in a bank subject to check, and the pensioner had received therefor only a deposit slip, such fund would be exempt from administration by a receiver of his property." Also: "So where such fund is deposited in a bank by the pensioner, and a certificate of deposit, bearing interest, is given therefor by the bank to the pensioner, the money payable by such obligation of the bank to the pensioner could not be subjected to garnishment or to any other legal process against the pensioner." These statements, while they may be obiter so far as the case there under consideration was concerned, are in accord with the express language of the statute. However, the statement in the opinion, "So if pension money of a Confederate soldier is converted into property of any kind, such property under this statute can not be subjected to any process against the pensioner," is also obiter, and we think it is subject to qualification. It would seem that in all these rulings the question as to whether the creditor is a subsequent creditor who lends on faith of the ownership of such property, and whether he has notice of such ownership, is of supreme importance.

It is true, as contended by counsel for defendant in error, that "it is settled law that property paid for in full with other property previously set apart in due and proper manner under the homestead and exemption laws takes the place of the latter, and is impressed with the homestead character" (*Broome* v. *Davis,*

87 *Ga.* 584, 13 S. E. 749); but it can not be said by analogy to this principle that any property in which pension money may be invested is therefore free from proceedings by creditors, for the reason that notice is of vital importance in such cases and homestead property is a matter of record and is therefore constructive notice to the world of its character and exemption. Moreover, the rule quoted above has been modified in accordance with the principle that we think should apply in this case. See, in this connection, *Walden* v. *Brantley Co.*, 116 *Ga.* 298 (42 S. E. 503), where it was held: "Though land bought with the proceeds of a homestead is homestead property, and ordinarily stands, as to exemptions from sale, on the same footing as the original homestead, this is not true as against the rights of one who bona fide and for value acquires à lien on such land, without knowledge, either actual or constructive, of its homestead character." It is certainly true that no existing creditors of a pensioner may subject his pension, irrespective of its form, character, or investment, to the payment of their debts. It is given to him in grateful recognition of his services to his country. It is, as suggested by counsel for the plaintiff in error, analogous to a year's support in some particulars. The pensioner may, as may the widow in the year's support, sell the land or spend the money or create liens thereon. The right to sell, in year's support, implies the right to mortgage. *Phillips* v. *Cook,* 158 *Ga.* 151 (123 S. E. 108). A pensioner is and should be protected against any and all claims which may in any way interfere with his free use and enjoyment of the reward of a grateful people. Such reward is not subject to be molested by any claim of creditors against him. On the other hand, it was not the intention of the government, State or national, that such exemption from liability in the free use and enjoyment of that granted to him should give him the right so to use such property as to take away the right of property of others. When a pensioner has invested his pension money in other property, real or personal, he has had the use and enjoyment thereof, which is the right guaranteed by the government to him. When he subsequently uses the property in which he has invested his pension money, as a means of borrowing money, and gives a lien on the property to a creditor who is willing to loan money in consideration of such lien, the creditor is as much entitled to protection as against the pensioner as he is

against any other citizen. There is nothing to put him on notice, either actual or constructive, that the fee-simple title to the property mortgaged was impressed with a special character, and when the creditor attempts to enforce his obligation the pensioner may not rely on the exemption as provided for in § 1495. Such exemption has already fulfilled its mission, and a further enlargement of its functions makes it an instrument which may be used as an agency of fraud. It would seem that the defendant had the use of her pension money when she invested the same in a cow. She had it a second time when she used the cow as a means of obtaining credit, and she will not now be heard to say that she should not be forced to pay the debt so created, but that she should be allowed the money and the cow. She will not be permitted to blow both hot and cold. It can not be disputed that the pensioner had the right to buy the cow and then to sell it, and, having the right to sell, she certainly had the right to mortgage. We are of the opinion that the judge of the superior court erred in sustaining the certiorari and remanding the case for a new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*