STATE OF NORTH CAROLINA v. WILLIAM ROBERT BULLARD, III.

(Filed 16 June, 1966.)

**1. Searches and Seizures § 2—**

While averments in the affidavit for a search warrant need not be competent under the strict rules of evidence, they must disclose justifiable and probable cause to believe that a search will reveal the presence of the particular object sought.

**2. Same—**

Affidavit of an officer that he had reasonable grounds to believe that defendant possessed a quantity of peyote, that a person known to him to be reliable had stated that he had in the immediate past seen peyote at defendant's address, and that the informant had delivered to the affiant peyote, obtained from the address and identified by a chemist, *held* to justify the issuance of a search warrant, and to render competent in evidence peyote and marijuana obtained by a search of defendant's premises.

**3. Narcotics § 1—**

Defendant's contention that peyote and marijuana are not narcotic drugs within the purview of the statute is untenable, since the statute specifically includes peyote and marijuana within its definitions. G.S. 90-87(1); G.S. 90-87(9). Further, in this case, there was expert testimony that peyote and marijuana are narcotic drugs.

**4. Constitutional Law § 22—**

The constitutional guarantees of religious liberty relate to religious beliefs but do not extend to practices, even though such practices are engaged in pursuant to religious beliefs, when such acts are proscribed by statutes enacted in the interest of the public safety, morals, peace or order.

**5. Same; Narcotics § 1—**

The possession of peyote and marijuana in violation of statute cannot be justified under the guise that they were used by defendant in the exercise of his religious beliefs.

MOORE, J., not sitting.

APPEAL from *Latham, S.J.,* December 13, 1965 Criminal Session, ORANGE Superior Court.

The defendant was tried on a bill of indictment charging in two counts that he did unlawfully, wilfully and feloniously have in his possession on the 4th day of August, 1965 both peyote and marijuana, in violation of N.C.G.S. 90-88, 90-87(1)d and 90-87(9). These statutes provide, among other things, that it shall be unlawful for any person to possess, have in his control, sell, etc., any narcotic drugs in which is included cannabis. Cannabis is defined as "including peyote or marijuana." The defendant entered a plea of not guilty, the cause was heard before a jury, and upon conviction and judgment imposed, he appealed to the Supreme Court.

The State's evidence tends to show that on August 4, 1965 the State's witness, SBI Agent, Haywood Ray Starling and several officers of the Chapel Hill Police Department obtained a search warrant and, under this authority, entered and searched the apartment of the defendant, William Robert Bullard, III, on 127 Rosemary Street in Chapel Hill. As a result of the search a quantity of peyote and marijuana was found and the defendant was charged with the violation of the statutes referred to above.

The defendant testified in his own behalf that the peyote and marijuana were his and that they were used in religious beliefs. He said that as a member of the Neo-American Church that both peyote and marijuana, being plants which grow from the earth, are believed to be the incarnation of the spirit of God, and it is necessary to use them in the practice of his religion and he thereupon claimed immunity on constitutional grounds. The jury convicted the defendant on both charges and he appealed.

*T. W. Bruton, Attorney General, Wilson B. Partin, Jr., Staff Attorney, for the State, Appellee.*

*Cooper & Winston by Barry T. Winston Attorney for Defendant Appellant.*

PLESS, J. The facts in this case are not in dispute. That is, the State's evidence was overwhelmingly that the defendant had peyote and marijuana in his possession in his Chapel Hill apartment and the defendant admits this. The trial judge, in effect, told the jury that if they found these to be the facts the defendant would be guilty. The defendant interposes three grounds of defense. (1) That the search warrant used by the officers was not validly issued, that evidence obtained under it was incompetent, and that without that evidence, the cause should have been non-suited. (2) That peyote and marijuana are not narcotics and, therefore, their possession can-

not constitute a violation of the law.  (3)  That as a Peyotist the use of this substance is necessary in the practice of his religion; that its possession under those conditions is not a criminal offense, and to forbid its use constitutes a violation of his constitutional rights.

In support of his claim that the search warrant used by the officers was not valid, the defendant relies principally upon the case of *Aguilar v. Texas*, 278 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. In that case the U. S. Supreme Court reversed *Aguilar's* conviction upon a charge of possessing narcotics because certain requirements it laid down for the issuance of search warrants were not met in that case. It said that "(T)he magistrate must be more than a mere rubber stamp for the police officers; that the officers must provide their reasons for believing and relying upon the credibility of their informant." These objections are not valid here. The search warrent was issued upon the oath of Sergeant W. F. Hester, an officer of the Chapel Hill Police Force, that he had reasonable grounds to believe that the defendant possessed a quantity of peyote; that a person known to him to be reliable had stated that "He has in the immediate past period seen peyote" at the defendant's address; that the informer had also delivered to the affiant portions of the peyote and that this had been examined by one skilled in the identification of peyote who had identified it as such.

It must be remembered that the object of search warrants is to obtain evidence — if it were already available there would be no reason to seek their issuance. They must be issued upon information which may not at that time be competent as evidence by strict rules, but there must be justifiable and probable cause to believe that a search will reveal the presence of the object sought. There can be no doubt that upon the affidavit of Sgt. Hester the Clerk of the Recorder's Court was justified in issuing the search warrant. The defendant's exception to its issuance and the evidence obtained as a result thereon was properly overruled.

The defendant's second objection to the State's case is that the possession of peyote and marijuana are not unlawful because they are not narcotic drugs. Here the defendant is confronted with the provisions of the Statute § 90-87(9) which says, " 'Narcotic drugs' means * * * cannabis, etc.," and § 90-87(1): " 'Cannabis' includes * * * Peyote or marihuana."

In addition, the State's witness, Starling, testified he was a graduate of the Federal Bureau of Narcotics Advanced Training School; that he had worked for four years "exclusively on narcotic investigation;" that he had "taught school to local police officers on various aspects of narcotic investigation." While the record does not show that the court held Mr. Starling to be an expert in this field, he un-

doubtedly qualifies as such. He describes peyote "as a plant that grows wild and * * * is used sometimes by persons who use narcotics illegally * * * to produce certain hallucinations type effects." He also testified that marijuana "is a narcotic * * * and is a type of weed that distorts the senses."

Also, the State's witness Best, who qualified as an expert in the field of chemistry, as it pertains to the identification and analysis of narcotic drugs, referred to "the narcotic known as Marijuana," and testified that prior to this case he had "had occasion to examine, identify and analyze the narcotic known as marijuana." Thus, defendant's second ground of defense is successfully met and it is denied.

The third and most emphasized position for the defendant is that he is now a Peyotist with Buddhist leanings and that he has recently joined the Neo-American Church and that "peyote is most necessary and marijuana is most advisable in the practice of my church's beliefs." The very interesting and informative brief filed on behalf of the defendant describes the ceremonies connected with the defendant's religion. They have "meetings" which are marked by the sacramental use of peyote and which composes the cornerstone of the peyote religion. Thereupon, "the members pray, sing, and make ritual use of drum, fan, eagle bone, whistle, rattle, and prayer cigarette, the symbolic emblems of their faith. The central event, of course, consists of the use of peyote in quantities sufficient to produce a hallucinatory state. * * * (P)eyote constitutes in itself an object of worship. * * * When taken internally by chewing the buttons or drinking a derivative tea, peyote produces several types of hallucinations, depending primarily upon the user. In most subjects it causes extraordinary vision marked by bright and kaleidoscopic colors, geometric patterns, or scenes involving humans or animals. In others it engenders hallucinatory symptoms similar to those produced in cases of schizophrenia, dementia praecox, or paranoia."

The defendant's position is that to convict him of the possession of a substance which is a necessary part of his religion, constitutes a violation of his rights under the first amendment, and cites a number of cases in support, including *Reynolds v. U. S.,* 98 U.S. 145; *People v. Woody,* 40 Cal. Rptr. 69, 394 P. 2d 813; *Marsh v. Alabama,* 326 U.S. 501 and *Tucker v. Texas,* 326 U.S. 517. He claims that the first amendment constitutes "a guarantee by government that all citizens shall be free to believe whatsoever they choose as to the nature of and the relationship between God and man and that the practices founded upon those beliefs shall not be hindered or impaired unless and until the conduct reaches the proportions of mal-

eficient criminal conduct. Hence, the State is forbidden from adopting any regulation dictating what any person's religious beliefs may or may not be," citing *Cantwell v. Connecticut,* 310 U.S. 296.

Some doubt may be cast upon the validity of the defendant's claim that he uses these drugs only in connection with his religion. The officers testified that in their discussion with him at the time the drugs were found in his apartment that the defendant made no mention of his religion nor the need for the drugs in connection therewith. A jury might well have found that this claim was a defense invented by the defendant long after his arrest. Even if he were sincere, the first amendment could not protect him. It is true that this amendment permits a citizen complete freedom of religion. He may belong to any church or to no church and may believe whatever he will, however fantastic, illogical or unreasonable, but nowhere does it authorize him in the exercise of his religion to commit acts which constitute threats to the public safety, morals, peace and order. As stated in *Reynolds v. U.S.,* 98 U.S. 145, 25 L. Ed. 244, at 250:

> "Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a' necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice? Or if a wife religiously believed it was her duty to burn herself upon the funeral pile of her dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice?"
>
> "* * * To permit * * * (a man to execute his practices because of his religious beliefs) would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

And in 16 Am. Jur., Constitutional Law, § 302, p. 595, it is said:

> "The freedom of religion guaranteed by state and federal constitutional provisions may properly be limited * * * (and) (t)he constitutional protection of religious freedom does not provide immunity from compliance with reasonable civil requirements imposed by the State in the interest of public welfare, and   * * * State legislatures may regulate conduct for the protection of society."

The defendant may believe what he will as to peyote and marijuana and he may conceive that one is necessary and the other is advisable in connection with his religion. But it is not a violation of his constitutional rights to forbid him, in the guise of his religion, to possess a drug which will produce hallucinatory symptoms similar to those produced in cases of schizophrenia, dementia praecox, or paranoia, and his position cannot be sustained here — in law nor in morals.

The defendant knowingly and intentionally possessed narcotic drugs in violation of the laws of the state and in his trial, after considering all of his positions, we find

No error.

MOORE, J., not sitting.