[No. 43278. En Banc. January 10, 1975.]

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT EDWIN FIELDS *et al*, *Respondents*.

*Christopher T. Bayley, Prosecuting Attorney*, and *Corydon J. Nelson, Deputy*, for petitioner.

*Victor V. Hoff*, for respondents.

BRACHTENBACH, J.—This is an appeal from an order quashing a search warrant and suppressing the evidence obtained pursuant thereto. Defendants were charged with violating RCW 9.68.010 which makes it a gross misdemeanor to exhibit certain obscene materials. The search warrant had been

issued under authority of our new criminal rules, specifically CrR 2.3(b) which, among other matters, authorizes a search warrant to search for and seize evidence of a crime. We reverse.

The trial court reasoned that the statute, RCW 10.79.015, which authorizes search warrants, limits, so far as applicable here, issuance of warrants to investigation of felonies while CrR 2.3(b) expands the grounds for issuance to all crimes, including misdemeanors. The trial court concluded that the subject matter related to substantive law rather than procedure and was thus beyond this court's rulemaking power.

Clearly CrR 2.3(b) authorizes the issuance of a search warrant in a substantially broader class of crimes than does RCW 10.79.015. The precise issue is whether in the exercise of its rulemaking power the Supreme Court may so expand the grounds for issuance of a search warrant beyond those legislatively authorized. Resolution of the question thrusts us into the procedure versus substantive law dichotomy.

Exhaustive research of the case law by the court has not revealed the exact origin of the search warrant nor a delineation of the source of the power to issue it. It is said that the search warrant was not known at early common law. *Buckley v. Beaulieu*, 104 Me. 56, 71 A. 70 (1908). Other cases state that the right to issue search warrants clearly existed at common law. *People v. Drury*, 250 Ill. App. 547, 571 (1928). A lower Pennsylvania court has held that the search warrant is a creature of the common law and may be issued without statutory authority. *Commonwealth v. Saba*, 29 Northampton County 320 (Pa. 1944). It is reported that since ancient times it has been customary for justices to issue search warrants for the seizure of stolen property. 34 Harv. L. Rev. 361 (1920-21). Even the use of the search warrant to search for stolen property has been described as having "crept into the law by imperceptible practice." 19 T. Howell, *State Trials, Entick v. Carrington* 1029, 1067 (1753-1771).

Much has been written about the oppressive use in England of general warrants, particularly in reference to their use in searching for articles of seditious libel by authors and printers. Lord Camden's opinion in *Entick v. Carrington, supra,* declaring such warrants illegal is described as a landmark of liberty. *See* 34 Harv. L. Rev. 361 (1920-21) and numerous references cited therein. From our history we know that in the colonies the writs of assistance, similar to the English general warrants, were used to combat smuggling. Open opposition to these broad oppressive writs developed, an event which John Adams described as the first act of opposition to the arbitrary authority of Great Britain. 8 *Old South Leaflets,* No. 179, at 60 (1817).

It was in this historical context that the Fourth Amendment to the United States Constitution was adopted, declaring the right of the people to be free from unreasonable searches and seizures and limiting the issuance of warrants to those founded on probable cause, supported by oath or affirmation and requiring specificity. A comparable right is contained in Const. art. 1, § 7. Unfortunately this background merely demonstrates the reason for the Fourth Amendment and does not answer the question whether the rulemaking power of the court includes authorization of the issuance of search warrants *within* constitutional limits, nor does it solve the substance versus procedure issue.

■■■■■ There are several grounds which justify our rule. First, the legislature has authorized the Supreme Court to adopt rules of procedure. RCW 2.04.190: "The supreme court shall have the power to prescribe . . . the forms of writs and all other process . . . [and] of taking and *obtaining evidence* . . ." (Italics ours.) The scope of the statute is sufficiently broad to include specification of those instances when a search warrant will issue because the statute specifically refers to the taking and obtaining of evidence. It has been held that "the object of search warrants is to obtain evidence—if it were already available there would be no reason to seek their issuance." *State v.*

*Bullard*, 267 N.C. 599, 601, 148 S.E.2d 565 (1966). Likewise, "[t]he function of a search warrant is authority to an officer for the taking into his custody of the property . . . devoted to an alleged unlawful or criminal use . . ." *Lodyga & Mantych v. State,* 203 Ind. 494, 501, 179 N.E. 542 (1932).

Quite apart from the statutory authority, this court has the inherent power to govern court procedures. *State ex rel. Foster-Wyman Lumber Co. v. Superior Court,* 148 Wash. 1, 267 P. 770 (1928). This stems from the constitutional provision that all judicial power of the state is vested in the Supreme Court and the various other courts designated in the constitution. Const. art. 4, § 1.

Proceeding under either the statutory authority or the inherent power of the court, we must still determine whether delineation of the grounds for issuance of a search warrant involves a matter of substance or procedure. If it is substantive law, it is beyond our authority.

It is well established that the issuance of a search warrant is part of the criminal process. *State v. Noah* 150 Wash. 187, 272 P. 729 (1928); *Brooks v. Wynn,* 209 Miss. 156, 46 So. 2d 97 (1950); *Dunn v. State,* 40 Okla. Crim. 76, 267 P. 279 (1928). E. Fisher, *Search and Seizure* ch. 1, § 35, at 63 (1970). Once we categorize the issuance of a search warrant as part of the criminal *process,* it follows that it involves a matter of procedure. This conclusion flows from the definition of legal process.

> The term "legal process" in its broadest sense is equivalent to procedure and embraces any form of order, writ, summons or notice given by authority of law for the purpose of acquiring jurisdiction of a person or bringing him into court to answer.

*Cutler v. Cutler,* 28 Misc. 2d 526, 528, 217 N.Y.S.2d 185 (1961).

> In a larger sense, "process" is equivalent to procedure, and may include all steps and proceedings in a cause from its commencement to its conclusion.

*Mobley v. Jackson*, 40 Ga. App. 761, 766, 151 S.E. 522 (1930).

We note that at least two states have authorized by court rule the issuance of search warrants. Rule 41 of the Colorado Rules of Criminal Procedure is even broader than our rule and much more extensive than their statutory basis for issuance. C.R.S. ch. 39, § 39.2.6. In fact a statute in conflict with the court rule, requiring additional information in the warrant, was declared invalid although the rule-making power of the court was not in issue. *People v. Leahy*, 173 Colo. 339, 484 P.2d 778 (1970).

Maine has a similar rule which replaced an existing statute. Rule 41, M.R.CR.P. *State v. Cadigan*, 249 A.2d 750 (Me. 1969).

 However, defendants argue that since their right here involved emanates from the constitution such right is necessarily substantive. What is that right? It is that of protection against unreasonable search and seizure, made without probable cause. *State v. Much*, 156 Wash. 403, 287 P. 57 (1930). The boundaries of the right are the same under the Fourth Amendment as under Const. art. 1, § 7. *State v. Miles*, 29 Wn.2d 921, 190 P.2d 740 (1948). Defendants still possess their right to be free of an unreasonable search and seizure, made without probable cause. They have no constitutional right to be immune from a reasonable search and seizure under a warrant issued upon probable cause as to any particular class of crime. The court rule has not diminished any substantive constitutional right—indeed it obviously could not.

The order of the trial court quashing the summons and suppressing the evidence obtained pursuant thereto is reversed.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.

ROSELLINI, J. (dissenting)—The majority concedes that CrR 2.3(b) has extended the authority of the courts to issue search warrants beyond that which was previously

granted by statute. In promulgating this rule, the court, in my opinion, has exceeded its constitutional powers. Whether the right to privacy be regarded as substantive or procedural, I do not think that the people intended that laws permitting governmental invasion of one's home should be established by court rule.

Const. art. 1, § 7 (not quoted in the majority opinion) provides:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

What did the people mean when they used the phrase "authority of law"? Did they have reference to rules adopted by judges for the expedition of the court's business, or were they thinking of acts of the legislature, enacted in response to the will of the people? I cannot doubt that they had in mind the latter.

Wherever one finds the term "law" used in the state constitution, it is with reference to laws passed by the legislature. *See* Const. art. 1, §§ 8, 12, 23 and 34. *See also* Const. art. 1, § 25, providing that prosecutions shall be by information or indictment, as prescribed by law. Article 2 established the legislature as the lawmaking body of the state, the right of initiative and referendum being reserved to the people. Section 18 provides:

> The style of the laws of the state shall be: "Be it enacted by the Legislature of the State of Washington." And no laws shall be enacted except by bill.

Article 4, establishing the judiciary, does not confer upon it the power to make laws, but only the power to adjudicate cases. No mention of the rulemaking power of this court can be found in the constitution. With these facts in mind, how can it reasonably be concluded that the people have conferred upon the court the power to make the laws governing the issuance of search warrants?

The right to be secure in one's private affairs, and in his home, is an essential of a free society. It is not surprising, therefore, that the framers of the constitution, in recogniz-

ing the necessity for the invasion of that privacy under certain circumstances, declared that the conditions under which such invasions should take place should be prescribed by law. Laws passed by the legislature are presumably enacted in response to the will of the people. If they are oppressive, the people can demand their repeal. They can exercise the powers of initiative and referendum. But if they are dissatisfied with a rule of court, what recourse have they? None, as I understand the majority opinion, as it deems it to be the inherent power of the court, and the legislature and citizens are powerless to change the rule. True, they can ask the legislature to take away the court's power to make a rule with regard to search and seizure, but such a remote remedy seems hardly adequate to protect a right deemed by the people to be so precious as the right of privacy.

As the majority has indicated in its opinion, abuse of the power of search and seizure has been one of the most useful instruments of oppression in the hands of despots. If the warrant can be obtained to search for evidence of any misdemeanor, no matter how trivial, it invites abuse by unprincipled persons in positions of power. There are literally thousands of state laws, county and city ordinances, all of which are misdemeanors and declared to be criminal. The legislature, in enacting statutes authorizing the issuance of the warrant, was careful to limit its use to instances of serious crime. This legislative action was no doubt responsive to the will of the constituents. The court, on the other hand, has made a rule so broad that it authorizes the invasion of a man's home for the most insignificant offense. This is understandable, since the court does not have the range of viewpoint and commitment which can be found in the legislature, nor does it have the time to study the problem of where the line should be drawn. It should not be surprising that it has avoided the problem by drawing no line at all.

But whether it is wiser and better that the legislature should make judgments of this kind, or that the court

should make them is not a matter which concerns us, except to the extent that it may throw some light upon the intent of the framers of the constitution. In this instance, it does supply a sound reason for the intent expressed in article 1, section 7, that the conditions under which the privacy of the individual could be invaded should be prescribed by legislative enactment.

This ground alone is sufficient to sustain the judgment. I would affirm.

Petition for rehearing denied March 13, 1975.