IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39113-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| A.M.W., | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Policy decisions regarding what punishments may follow from violations of law are the province of the legislature, not the judiciary. Nevertheless, in 2020, the Supreme Court adopted JuCR 7.16 as part of an effort to curtail the use of incarceration as a penalty for juvenile offenders. Although the rule is technically about warrants, the effect of the rule is to limit enforcement of the Juvenile Justice Act of 1977 (Juvenile Justice Act or the Act), chapter 13.40 RCW, to juveniles who pose "a serious threat to public safety." JuCR 7.16(a), (b). This directly interferes with the legislature's decision that the Juvenile Justice Act should be enforceable against all young people who commit crimes.

Because JuCR 7.16 conflicts with the substantive provisions of the Juvenile Justice Act, a majority of this court deems it unenforceable as a violation of separation of powers. We therefore affirm the juvenile court's decision to issue a warrant as to A.M.W.

BACKGROUND

On March 1, 2022, A.M.W. pleaded guilty in juvenile court to misdemeanor assault. The court entered a disposition order directing A.M.W. to spend 10 days in confinement (with 10 days of credit for time served), and submit to 10 hours of community service and 7 months of community supervision. Supervision conditions included refraining from committing new offenses, mandatory school attendance, reporting regularly to a probation counselor, keeping her probation counselor informed of her contact information, and attending "information classes and/or other educational programs, as directed by" her counselor. Clerk's Papers at 20-21.

A.M.W. largely failed to comply with the terms of her supervision. The court addressed A.M.W.'s noncompliance by twice modifying her disposition without issuing any warrants. But in July 2022, the court granted the State's motion for a bench warrant. By that time, A.M.W. had left her approved placement and was continuing to associate with an older boyfriend who was alleged to be abusive and involved in various forms of

violent crime. On two occasions, A.M.W. voiced suicidal ideation and she had made at least one suicide attempt.

A.M.W.'s attorney objected to the issuance of a bench warrant, arguing A.M.W. did not pose "a serious threat to public safety" as required by JuCR 7.16(a). The juvenile court overruled this objection. According to the court, A.M.W.'s suicidal ideation risked necessitating the involvement of first responders who would be diverted from other community needs. The court also reasoned A.M.W.'s use of controlled substances and refusal to comply with treatment generally placed the community at risk.

A.M.W. appealed the issuance of the warrant. Although the issue of A.M.W.'s warrant is now technically moot, the parties agreed this court should grant discretionary review to address interpretation of JuCR 7.16. A commissioner of our court granted review, citing RAP 2.3(b)(4) and concluding this case presented issues of continuing and substantial public interest. *See* Commissioner's Ruling, *State v. A.M.W.*, No. 39113-2-III, at 9 (Wash. Ct. App. Sept. 29, 2022).

ANALYSIS

This appeal involves the application and constitutionality of JuCR 7.16. The rule provides, in pertinent part, that judges adjudicating juvenile offense proceedings may not issue warrants for violations of court orders or for a juvenile's failure to appear at a court

hearing, "unless a finding is made" that the circumstances giving rise to the warrant

request pose "a serious threat to public safety." JuCR 7.16(a), (b).

JuCR 7.16 is a relatively new court rule that has yet to become the subject

of appellate review. We first review the background of JuCR 7.16, then analyze its

application to A.M.W.'s case and the parties' constitutional arguments.

*Background of JuCR 7.16*

The Washington Supreme Court adopted JuCR 7.16 in the wake of the COVID-19

pandemic, which posed safety concerns for youth detained in congregate settings. *See*

Br. of Resp't, App. at 40. When JuCR 7.16 was published for public comment, law

enforcement, judicial organizations, and other commenters voiced opposition to the rule.

They noted local jurisdictions were already reducing detention rates in response to

COVID-19. *See id.* at 41-42, 68, 81-83, 98-100, 103.[1] And they stressed that warrant

authority was essential to enforcing court orders and engaging juveniles who pose a risk

of self-harm. *See id.* at 100. But various advocacy organizations supported the adoption

---

[1] Even prior to the COVID-19 pandemic, juvenile arrest and detention rates had been declining. In recent years, the legislature passed several measures limiting juvenile detention. In 2013, and again in 2018, the legislature expanded the scope of juvenile diversion. *See* LAWS OF 2013, ch. 179 § 3; LAWS OF 2018, ch. 82 § 1. In 2019, the legislature curbed judicial authority to incarcerate youth in nonoffender juvenile court proceedings. LAWS OF 2019, ch. 312. And in 2017, the legislature eliminated mandatory arrest for juveniles accused of domestic violence. LAWS OF 2017, ch. 223.

of JuCR 7.16. They emphasized not only the health risks posed by congregate detention during the height of the pandemic, but also the harms and racial inequities associated with youth incarceration in general. *See id.* at 59-67.

After the close of public comments, the Supreme Court issued an order adopting JuCR 7.16 as a permanent rule, effective February 1, 2021. *Id.* at 140.

Several months after the adoption of JuCR 7.16, the Superior Court Judges' Association (SCJA) submitted a proposal suggesting amendments to JuCR 7.16. To summarize, the amendments would allow issuance of warrants based on a juvenile's risk of self-harm, and also provided an avenue for the issuance of a warrant should a juvenile continually fail to respond to notices for court appearances. *See id.* at 42, 157, 162-63. The Supreme Court rejected the SCJA's proposed amendments without explanation or an opportunity for public comment. *See id.* at 42-43, 164.

In 2022, the SCJA and the Washington Association of Juvenile Court Administrators (WAJCA) again requested changes to JuCR 7.16. *See id.* at 40. The organizations asked to either rescind JuCR 7.16 or adopt the amendments that had been proposed in 2021. *See id.* at 40, 47. In support of the proposed rule change, the organizations explained JuCR 7.16 "prevents judges and juvenile court partners from effectively performing their statutory responsibilities" under the Juvenile Justice Act.

*Id.* at 44. The organizations noted that juvenile courts had been reducing youth detention rates for years, prior to the adoption of JuCR 7.16. *See id.* at 45. The organizations also challenged the idea that youth are necessarily traumatized by the type of short-term detention associated with execution of a bench warrant. *See id.* at 47.

The Supreme Court referred the proposed changes to JuCR 7.16 for public comment. Responses were similar to what had been submitted during consideration of the original rule in 2020. Numerous advocacy organizations and attorneys objected to changing JuCR 7.16, arguing detention is harmful to juveniles and the needs of juveniles are better addressed through family and community supports.[2] In support of changing JuCR 7.16, law enforcement, judicial organizations, and others argued that the rule was not helping youth or their families and it was undermining the substantive goals of the Juvenile Justice Act. *See id.* at 204-05, 221-23, 227, 235, 239, 241, 248, 250-51, 265, 271, 273-74, 292.

On September 26, 2023, the Supreme Court issued a letter to the SCJA and WAJCA, advising that it had decided against modifying JuCR 7.16. *See* Letter from Steven C. González, C.J., Wash. Sup. Ct., to Samuel S. Chung, J., President, Superior

---

[2] Perhaps given the decreased perceived urgency of the COVID-19 pandemic, health and safety concerns no longer played a significant role in the responses submitted by supporters of JuCR 7.16.

Ct. Judges' Ass'n, and David Reynolds, President, Wash. Ass'n of Juv. Ct. Adm'rs

(Sept. 26. 2023) [https://perma.cc/4PVQ-LFZL].

*Application of JuCR 7.16 to A.M.W.*

The warrant issued in A.M.W.'s case purported to comply with JuCR 7.16. But

the parties agree on review the terms of the rule were not satisfied. *See* Br. of Pet'r at 23;

Br. of Resp't at 17. Our review is de novo. *See Walker v. Orkin, LLC*, 10 Wn. App. 2d

565, 569, 448 P.3d 815 (2019).

We agree with the parties that the juvenile court's issuance of a warrant did not

satisfy the plain terms of JuCR 7.16. As has been stated, JuCR 7.16 prevents a court from

issuing a bench warrant unless the court finds the circumstances giving rise to the warrant

request involve "a serious threat to public safety." The juvenile court in this case reasoned

A.M.W.'s suicidal ideation met the requirements of JuCR 7.16 because of the possible

need for first responders to assist in her care. We find this concern too attenuated to

qualify as a "serious" threat to public safety. JuCR 7.16(a). While it is theoretically

conceivable that a community's emergency response team could be spread so thin that it

would not be able to handle multiple urgent calls for help, this outcome does not appear

particularly likely. We agree with the parties that this attenuated risk of conceivable harm

does not meet the rigorous language set forth in JuCR 7.16.

*Constitutionality of JuCR 7.16*

Rather than debate the application of JuCR 7.16 to A.M.W.'s case, the parties

dispute the constitutionality of the rule. According to the State, JuCR 7.16 violates the

separation of powers because the judicially adopted rule conflicts with the choices made

by our legislature in the Juvenile Justice Act. We review this type of constitutional claim

de novo. *See Hanson v. Carmona*, 1 Wn.3d 362, 369, 525 P.3d 940 (2023).

"The Washington State Constitution does not contain a formal separation of

powers clause, but the division of government into branches has been presumed

throughout our history." *Id.* at 387. "The doctrine of separation of powers divides power

into three coequal branches of government: executive, legislative, and judicial." *Putman*

*v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 980, 216 P.3d 374 (2009). The

proper inquiry when determining whether an action violates the separation of powers

doctrine is "'whether the activity of one branch threatens the independence or integrity or

invades the prerogatives of another.'" *Hanson*, 1 Wn.3d at 388 (quoting *Zylstra v. Piva*,

85 Wn.2d 743, 750, 539 P.2d 823 (1975)).

Separation of powers problems may arise when a court-adopted rule conflicts

with statutes enacted by the legislature. Our case law directs that we first endeavor to

harmonize rules and statutes in a way that avoids conflict. *Putman*, 166 Wn.2d at 980.

8

But when conflict is inescapable, resolution depends on the subject matter of the competing regulations. A court rule will prevail in procedural matters, while a statute will prevail when the matter is substantive. *Waples v. Yi*, 169 Wn.2d 152, 158, 234 P.3d 187 (2010) (quoting *Putman*, 166 Wn.2d at 980).

1. *Whether JuCR 7.16 can be harmonized with the Juvenile Justice Act*

In assessing the possibility of harmonizing the court rule and statute, we first look at the Juvenile Justice Act.

The Juvenile Justice Act is a comprehensive statutory scheme designed to address problems associated with young people involved in crime. The purposes of the Act are to protect the public, provide compensation to victims, and to hold juvenile offenders accountable for criminal behavior through a combination of punishment, rehabilitation, and treatment. *See* RCW 13.40.010.

The legislature crafted the Juvenile Justice Act so that it would apply to all juveniles involved in criminal activity, not just those involved in serious or violent offenses. *See id.* Indeed, the Juvenile Justice Act itself recognizes that juveniles involved in some of the most serious violations of law may have their cases processed in adult criminal court. *See* RCW 13.40.110.

The possibility of incarceration is a significant component of the Juvenile Justice Act. The legislature has designated standard ranges of confinement for juveniles adjudicated guilty of criminal offenses. *See* RCW 13.40.0357; RCW 13.40.160. All criminal offenses are included, not just crimes involving serious threats to public safety. In addition, confinement is specified as a penalty for juveniles who fail to comply with rehabilitative measures. *See* RCW 13.40.127(7); RCW 13.40.162(8); RCW 13.40.165(7); RCW 13.40.200(3).

The Juvenile Justice Act recognizes judges require certain tools in order to hold juveniles accountable under the terms of the Act. Thus, RCW 13.40.040 provides judges authority to issue warrants under a wide array of circumstances. A warrant may issue to bring a juvenile into court when there is probable cause to believe the juvenile has committed a crime. RCW 13.40.040(1)(a). And the court may also issue a warrant if there is probable cause to believe a juvenile has violated the terms of a disposition order or release order. *Id.*

JuCR 7.16 differs from the Juvenile Justice Act because it restricts the ability of a judge to hold juveniles accountable through their warrant authority. Under the rule, unlike the Act, a judge may not issue a warrant simply because a juvenile has disobeyed a court order or failed to appear at a hearing. Instead, the court must also find a juvenile poses

"a serious threat to public safety." JuCR 7.16(a), (b). This added requirement is a significant restriction of a judge's statutory authority because not all crimes or violations of court orders—for which warrants may issue under the Act—present public safety risks. There may be circumstances where a law enforcement officer can arrest a juvenile without a warrant. RCW 13.40.040(1)(b). But under JuCR 7.16, the only tool a *judge* has to haul into court a juvenile who does not pose a "serious" safety risk into is to issue a summons or similar notice to appear. *See* RCW 13.40.100; JuCR 7.5(a), (b). If the juvenile refuses to comply with the summons, there is no recourse so long as they remain a less-than-serious risk to public safety.

The restrictions placed on a judge's statutory warrant authority by JuCR 7.16 render the Juvenile Justice Act a voluntary system for all but the most serious offenders. The rule creates a categorical bar to the issuance of warrants that would otherwise be proper under RCW 13.40.040. And it impedes courts from comprehensive enforcement of the Juvenile Justice Act as to all juvenile offenders as contemplated by RCW 13.40.010.

The tension between JuCR 7.16 and the Juvenile Justice Act cannot be reconciled. Thus, we must determine which authority must give way: the Act or the rule.

## 2. *Whether JuCR 7.16 is procedural or substantive*

When there is an irreconcilable conflict between a court rule and a statute,

resolution of the conflict turns on whether the subject matter is procedural or substantive. "[T]he court rule will prevail in procedural matters and the statute will prevail in substantive matters." *Putman*, 166 Wn.2d at 980.

There is often no clear line between what counts as procedural and what is substantive. *See State v. Gresham*, 173 Wn.2d 405, 431, 269 P.3d 207 (2012). But our analysis is informed by the following guidelines:

> Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.

*Id.* (quoting *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974)).

As recognized by the State, oftentimes rules governing how or whether a defendant will be taken into custody are procedural. In *Smith*, the Washington Supreme Court addressed a conflict between a court rule and statute regarding the availability of bail pending appeal. 84 Wn.2d at 499-500. The statute directed courts to fix bail in all noncapital cases where a defendant had filed an appeal. But under a judicially adopted court rule, release pending appeal could be limited based on a judicial finding of risk of flight or danger to the community. *Id.* at 500-01. The Supreme Court held that the subject matter of the conflicting statute and court rule was procedural because, under both

tradition and common law, the power to fix bail was one that fell to the courts, not the legislature. *See id.* at 501. The court explained that an issue is procedural if it "relates to the *manner* of ensuring that [an] alleged offense will be heard by the court." *Id*. at 502. The court concluded the rule at issue in *Smith* met this requirement.

But courts must look beyond the surface of a rule to determine whether it is procedural or substantive. Many rules live in a "borderland where procedure and substance are interwoven." *Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 471 (7th Cir. 1984). When faced with a separation of powers challenge, we must unravel the purpose and effect of a particular rule in order to discern whether it interferes with the legislature's substantive authority to "prescribe[] norms for societal conduct and punishments for violations thereof." *Smith*, 84 Wn.2d at 501.

As should be apparent from our discussion of the conflict between JuCR 7.16 and the Juvenile Justice Act, we deem the court rule substantive. The rule does not merely regulate the manner in which juveniles may be held to account for violation of a court order or failure to appear under the Juvenile Justice Act. It restricts courts from holding juveniles accountable as contemplated by the Juvenile Justice Act unless the juvenile presents a serious threat to public safety. This renders the juvenile court an ineffective tribunal for many of the cases the State is authorized to charge under the Act. And it

13

conflicts with the legislature's policy choice that the Juvenile Justice Act should apply

to all juveniles who violate criminal statutes, not just those who pose grave risks to the

community.

The purpose behind JuCR 7.16 also reveals the rule is substantive. It is well settled

that policy decisions regarding the availability of punishment are substantive, not

procedural. *See id.* (noting the category of "[s]ubstantive law" includes laws that regulate

"punishments for violations" of other substantive law). For "[o]ver 80 years" our courts

have recognized that "the '[f]ixing of penalties or punishments for criminal offenses is

a legislative function, and the power of the legislature in that respect is plenary and

subject only to constitutional provisions against excessive fines and cruel and inhuman

conduct.'" *In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 591, 520 P.3d 939

(2022) (alteration in original) (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360

(1937). Yet the apparent reason JuCR 7.16 was adopted was to limit the availability of

incarceration as a punishment for broad classes of juvenile offenders.[3] This is a hotly

---

[3] Technically, JuCR 7.16 addresses only warrants. Detention pursuant to a warrant is not punishment, and a warrant need not result in incarceration. However, a court's practical ability to impose incarceration as a punishment is inextricably tied to its power to haul defendants into court, such as by issuing a warrant. It is doubtful that many people accused of a crime would voluntarily turn themselves in for a term of incarceration if they knew there would be no consequence for failing to appear.

contested policy decision that should lie with the legislature; it is not procedural.[4] *See*

*Aji P. v. State*, 16 Wn. App. 2d 177, 191, 480 P.3d 438 (2021) (noting that when they

"wad[e] into the waters of what policy approach to take," courts deviate from their proper

function); *see also City of Vancouver v. Boldt*, 21 Wn. App. 2d 100, 108-09, 504 P.3d 862

(2022) (holding statute prescribing when a district court commissioner may preside over a

trial was procedural because it governed the court's mere mechanics rather than affecting

the availability of relief); *In re Det. of W.C.C.*, 193 Wn. App. 783, 791, 372 P.3d 179

(2016) (holding that "setting the timing of a hearing" is procedural because it does not

"implicate[ ]" the "outcome" of that hearing).

Counsel for A.M.W. argues that JuCR 7.16 does not limit the scope of the Juvenile

Justice Act because, under the rule, a court can still issue a summons to order a juvenile

into court in lieu of a warrant. We disagree. A summons to appear in court has no

meaningful power if it is not backed up by the possibility of a warrant or some other

---

[4] It is worth noting that although the judiciary cannot displace a statutory scheme
on the basis of policy preferences, it can invalidate a statute as unconstitutional. *See, e.g.*,
*Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding
the United States Constitution prohibits mandatory application of statutes directing life
imprisonment without parole for juvenile defendants); *State v. Blake*, 197 Wn.2d 170,
481 P.3d 521 (2021) (invalidating strict liability drug possession statute on constitutional
grounds). There has been no argument here that the Juvenile Justice Act is unconstitutional
because it permits incarceration for juveniles who do not pose a serious threat to public
safety.

sanction. There may be some juveniles who will appear in response to a summons despite the lack of any adverse consequences for noncompliance. But it would be naïve to think that young people who, for example, are in the throes of addiction, have run away from home, or are under the influence of an abusive relationship, will voluntarily respond to a court's attempt to assert its authority under the Juvenile Justice Act. Instead, the legislature plainly recognized that courts must be able to hold juveniles "accountable for their offenses." RCW 13.40.010(2). Accountability is not possible if courts lack the tools necessary to compel the presence of an unwilling participant.

As argued by the State, JuCR 7.16 is unique in that it restricts, rather than expands, the judiciary's ability to adjudicate cases. As set forth above, the bail rule approved in *Smith* facilitated the State's ability to secure justice by enabling courts to deny bail pending appeal where individuals were likely to flee from accountability or endanger the community. Similarly, in *State v. Fields*, 85 Wn.2d 126, 530 P.2d 284 (1975), the Supreme Court held that a court rule authorizing search warrants for misdemeanors was procedural, rather than substantive. The rule in *Fields*, that expanded courts' authority under a statute authorizing warrants in felony cases, enhanced the State's ability to bring offenders to justice by litigating criminal violations.

16

By restricting judicial authority, JuCR 7.16 conflicts with the delegation of authority set forth in RCW 2.04.190.[5] This statute recognizes the Supreme Court's authority to adopt procedural rules "to promote the speedy determination of litigation on the merits." RCW 2.04.190. But by greatly limiting the ability of juvenile courts to issue warrants, JuCR 7.16 prolongs court proceedings since time for adjudication tolls when a juvenile fails to appear for a hearing. *See* JuCR 7.8(c)(2)(ii). And application of the rule creates increased risks that cases will be decided on the basis of nonparticipation instead of on the merits. JuCR 7.16 is not a rule that facilitates the adjudication of a juvenile court case. It thwarts the State's ability to seek an adjudication altogether.[6] We deem this type of substantive restriction a matter that falls outside the scope of the Supreme Court's rule-making authority.

We recognize the Supreme Court ratified JuCR 7.16 despite being made aware of many criticisms of the rule. But adoption of the rule does not settle the issue of its

---

[5] The Supreme Court's rule-making authority is derived at least partially from legislative authorization. *See State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002).

[6] A.M.W.'s counsel conceded at oral argument that if A.M.W. chose to "never appear[]" in juvenile court before her 18th birthday, "perhaps that would be a circumstance where the juvenile court can't exercise [its] statutory authority." Wash. Ct. of Appeals oral argument, *State v. A.M.W.*, No. 39113-2-III (Dec. 6, 2023), at 7 min., 37 sec. through 8 min., 1 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

17

constitutionality. The Supreme Court acts in its administrative capacity when it implements court rules. *See City of Seattle v. Erickson*, 188 Wn.2d 721, 738, 398 P.3d 1124 (2017) (Stephens, J., concurring). Judicial review is a different task and a properly adopted rule may nevertheless be invalidated as unconstitutional. *See, e.g.*, *In re Det. of D.F.F.*, 172 Wn.2d 37, 256 P.3d 357 (2011) (plurality opinion). Because the Supreme Court has not yet reviewed JuCR 7.16 in its judicial capacity, it is our responsibility to decide the constitutionality of the rule in the first instance. *See* RCW 2.06.030 (The Court of Appeals "shall be vested with all power and authority . . . necessary to carry into complete execution all of its judgments, decrees and determinations in all matters within its jurisdiction, according to the [court] rules and principles of the common law and the Constitution and laws of this state.").[7] Until or unless the Supreme Court rules otherwise, it is the judgment of this court's majority that JuCR 7.16 is a substantive rule that cannot be enforced in the face of the Juvenile Justice Act.

---

[7] Counsel for A.M.W. has suggested we lack authority to question the constitutionality of a rule promulgated by the Supreme Court. *See* Wash. Ct. of Appeals oral argument, *supra*, at 14 min., 31 sec. through 14 min., 55 sec. No authority has been cited for this claim. The Court of Appeals is regularly tasked with deciding the legality of rules adopted by the Supreme Court. *See, e.g.*, *Boldt*, 21 Wn. App. 2d at 109; *State v. Templeton*, 107 Wn. App. 141, 147, 27 P.3d 222 (2001), *rev'd on other grounds*, 148 Wn.2d 193, 59 P.3d 632 (2002); *State v. W.W.*, 76 Wn. App. 754, 758, 887 P.2d 914 (1995); *State v. Thomas*, 65 Wn. App. 347, 350, 827 P.2d 1394 (1992), *aff'd*, 121 Wn.2d 504 (1993).

No. 39113-2-III
*State v. A.M.W.*

Our assessment should not be interpreted as an agreement with the legislature's policy preferences embodied by the Juvenile Justice Act. In the United States, 114 out of every 100,000 youths are incarcerated, which dwarfs the global average.[8] Youth incarceration facilities have been described as "dangerous," "ineffective," "unnecessary," "obsolete," "wasteful," and "inadequate."[9] And those caught up in the system are disproportionately Black, Indigenous and other youth of color.[10] Based on these critiques, there have been calls to abolish the juvenile justice system and juvenile incarceration altogether.[11]

---

[8] *See* Kids Count Data Ctr., *Youth Residing in Juvenile Detention, Correctional and/or Residential Facilities in the United States,* ANNIE E. CASEY FOUND. (last updated Jan. 2024), https://datacenter.aecf.org/data/tables/42-youth-residing-in-juvenile-detention-correctional-and-or-residential-facilities; PENAL REFORM INT'L, GLOBAL PRISON TRENDS 2022, at 22 (May 2022), https://cdn.penalreform.org/wp-content/uploads/2022/05/GPT2022.pdf [https://perma.cc/K5LQ-YL9E].

[9] ANNIE E. CASEY FOUND., NO PLACE FOR KIDS: THE CASE FOR REDUCING JUVENILE INCARCERATION 3 (2011), https://assets.aecf.org/m/resourcedoc/aecf-NoPlaceForKidsFullReport-2011.pdf [https://perma.cc/U6KF-XMVW].

[10] *See* Task Force 2.0 Juv. Just. Subcomm., *Race in Washington's Juvenile Legal System: 2021 Report to the Washington Supreme Court*, 57 GONZ. L. REV. 636, 689, 692 (2021); ANNIE E. CASEY FOUND., YOUTH INCARCERATION IN THE UNITED STATES 2 (Dec. 2021), https://assets.aecf.org/m/resourcedoc/aecf-youthIncarcerationinfographic-2021.pdf [https://perma.cc/K4Z9-CTTZ].

[11] *See, e.g.*, Beth Caldwell, *Shifting the Paradigm: An Abolitionist Analysis of the Recent Juvenile Justice "Revolution,"* 23 NEV. L.J. 115, 158-59 (2022); Nancy E. Dowd, *Black Lives Matter: Trayvon Martin, the Abolition of Juvenile Justice and #BlackYouthMatter*, 31 U. FLA. J.L. & PUB. POL'Y 43, 44-46 (2020).

But how to strike the correct balance in responding to the issue of juvenile law-breaking is a complex matter of substance and policy.[12] Perhaps the legislature will eventually agree with the balance struck by JuCR 7.16 and adopt legislation similarly circumscribing the availability of warrants. But it could also be that our State's policymakers will conclude an optimal juvenile justice system must allow for warrants for violations of court orders or failure to appear under a variety of circumstances, even if incarceration is restricted. Those of us who have worked in therapeutic courts know that a court's authority to quickly bring someone into court who is on the verge of catastrophic drug use or criminal activity can have a beneficial, life-changing impact. Absent constitutional restrictions, we believe courts should not take away a tool that the legislature might find helpful in reimagining our juvenile justice system. Instead, we should give room for legislators to be creative problem solvers. In our opinion, the challenge of fashioning a fairer, more effective and equitable juvenile justice system is a daunting task that must be left in the capable hands of our legislators.

---

[12] Recent recommendations for improving Washington's approach to juvenile justice envision a comprehensive strategy that involves new legislation, community partnerships, and increased funding to meet communities' basic needs and promote noncarceral alternatives. This ambitious overhaul requires a legislative approach, not judicial rule making. *See* Task Force 2.0 Juv. Just. Subcomm., *supra* at 698-718.

CONCLUSION

We affirm the juvenile court's issuance of a warrant. The warrant was proper under the Juvenile Justice Act. Although the issuance of the warrant did not satisfy the terms of JuCR 7.16, we deem this court rule ineffective in that it is a substantive rule that conflicts with the plain terms of the Juvenile Justice Act.

_____
Pennell, J.

I CONCUR:

_____
Cooney, J.

21

No. 39113-2-III

FEARING, C.J. (dissenting) —

Children are different. *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

I dissent because the subject matter of arrest warrants for failing to appear or for disobeying a court order bends on the side of procedure, not substance, and falls under the purview of the courts, not the legislature. Also, contrary to the majority's implied ruling, no decision transmutes a procedural rule to the substantive law box because of the rule's effects on substantive law. Finally, even under the court rule, the juvenile court may still incarcerate offenders who pose a serious public safety threat. I reach these conclusions after parsing JuCR 7.16 and RCW 13.40.040, surveying definitions of words such as "warrant," "arrest," "procedure," and "process," examining the separation of powers doctrine, studying Washington case law, and researching persuasive cases.

I agree with the majority that, although the appeal is moot, we should review the issue on appeal. The appeal entails the conflict between a court rule and a statutory scheme, both of which juvenile courts frequently apply. This court and the Supreme Court have resolved moot issues for similar reasons. The authority of courts constitutes a public matter. *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007) (plurality opinion). A conflict between a statute and a court rule presents a question of

public nature because of the desirability of an authoritative determination to provide future guidance to public officers. *In re Detention of Lane*, 182 Wn. App. 848, 851-52, 332 P.3d 1042 (2014). Grounds for incarceration in juvenile detention involve a matter of continuing and substantial public interest. *In re Interest of Mowery*, 141 Wn. App. 263, 274, 169 P.3d 835 (2007).

The appeal requires us to adjudge the validity of JuCR 7.16 in the face of the separation of powers doctrine because of its conflict with RCW 13.40.040. Both the court rule and the statute govern when the juvenile court seeks to incarcerate a juvenile offender who fails to appear for a hearing or breaches a court order, including a disposition order. This question presents the opportunity of a judgetime for a lower court to declare invalid action taken by the state Supreme Court. A lower court judge might relish the chance. But the difficulty and importance of the question detracts from any enjoyment. We, however, impliedly criticize the Supreme Court for seeming to summarily dismiss concerns presented to it by the state's dedicated and overworked superior court judges and court commissioners.

I first quote the contradicting court rule and statute. JuCR 7.16 declares:

> **(a) Quash Warrants Issued for Violation of Court Order Related to Juvenile Offense Proceedings**. For all juvenile offense proceedings, all outstanding warrants due to an alleged "*Violation of a Court Order*" shall be quashed by the court within 10 days of this court rule being enacted unless a *finding of serious public safety threat* is made in the record of the case to support the warrant's continued status. No new warrants shall issue

unless a finding is made that the individual circumstances of the alleged "Violation of a Court Order" pose a *serious threat to public safety*.

(1) Following the quashing of a warrant related to a community supervision matter, the Court may make a finding that community supervision is tolled until the next court hearing where the respondent is present either in person, by phone, or by videoconference.

(2) If a future court date is set, the Superior Court shall make best efforts to provide written notice to the respondent of the new court date.

**(b) Quash Warrants Issued for Failure To Appear for a Court Hearing Related to Juvenile Offense Proceedings**. For all juvenile offense proceedings, all outstanding warrants issued for a *Failure to Appear* juvenile offense proceeding shall be quashed by the court within 10 days of this court rule being enacted unless a *finding of serious public safety threat* is made in the record of the case to support the warrant's continued status. No new warrants shall issue unless a finding is made that the individual circumstances of the Failure to Appear poses a *serious threat to public safety*.

(1) Following the quashing of the warrant, the Superior Court shall make best efforts to provide written notice to the respondent of the new court date.

(2) Pursuant to CrR 3.3(c), the new commencement date shall be the date of the respondent's next appearance in person, by phone, or by videoconference.

(Emphasis added.)

JuCR 7.16's counteringpart, RCW 13.40.040, provides:

(1) A juvenile may be taken into custody:

(a) Pursuant to a court order if a complaint is filed with the court alleging, and the court finds probable cause to believe, that the juvenile has committed an offense *or has violated terms of a disposition order or release order*; or

(b) Without a court order, by a law enforcement officer if grounds exist for the arrest of an adult in identical circumstances. Admission to, and continued custody in, a court detention facility shall be governed by subsection (2) of this section; or

(c) Pursuant to a court order that the juvenile be held as a material witness; or

(d) Where the secretary or the secretary's designee has suspended the parole of a juvenile offender.

(2) A juvenile *may not be held in detention unless there is probable cause to believe that*:

(a) The juvenile has committed an offense or has violated the terms of a disposition order; *and*

(*i*) *The juvenile will likely fail to appear for further proceedings; or*

(*ii*) *Detention is required to protect the juvenile from himself or herself; or*

(*iii*) *The juvenile is a threat to community safety; or*

(*iv*) *The juvenile will intimidate witnesses or otherwise unlawfully interfere with the administration of justice; or*

(*v*) *The juvenile has committed a crime while another case was pending; or*

(b) The juvenile is a fugitive from justice; or

(c) The juvenile's parole has been suspended or modified; or

(d) The juvenile is a material witness.

(3) Notwithstanding subsection (2) of this section, and within available funds, a juvenile who has been found guilty of one of the following offenses *shall be detained pending disposition*: Rape in the first or second degree (RCW 9A.44.040 and 9A.44.050); or rape of a child in the first degree (RCW 9A.44.073).

(Emphasis added.)

A juxtaposition of JuCR 7.16 with RCW 13.40.040 unsheathes differences between the court rule and statute. JuCR 7.16 precludes some court actions permissible under RCW 13.40.040. Under the court rule, the court may not incarcerate someone who has violated the terms of an order or fails to appear unless the juvenile poses a serious threat to public safety. Under the statute, the court may incarcerate one who has violated the terms of a disposition order or fails to appear if the juvenile threatens

4

community safety, regardless of whether the threat magnifies to the level of being

serious. Under the court rule, the court may not incarcerate the juvenile solely to protect

him or her from himself or herself. Under the statute, the court may detain a juvenile for

his or her own safety. Finally, under JuCR 7.16, the court may not incarcerate a juvenile

for intimidating a witness, interfering with the administration of justice, or committing a

second crime unless he or she poses a serious threat to public safety. RCW 13.40.040

permits detention under any of these circumstances if the juvenile serves under

community custody.

RCW 13.40.040 applies in circumstances not even mentioned in JuCR 7.16.

The court rule applies only in instances of failure to appear or violation of a court order.

Under RCW 13.40.040 and without interference from JuCR 7.16, the court may, under

some circumstances, order to detention, at the time of the arraignment, a juvenile who

engages in one of many acts on a list of conduct regardless of whether the juvenile poses

a serious threat to public safety. Those circumstances include a failure to likely appear at

an upcoming hearing, the need to protect the accused from himself or herself, the juvenile

will intimidate a witness, the juvenile will interfere in the administration of justice, the

juvenile committed a crime while being prosecuted for an earlier crime, or the juvenile

threatens the public safety regardless of the intensity of the threat.

Before analyzing whether JuCR 7.16 trumps RCW 13.40.040, or vice versa, in

the case of A.M.W., I quote three important statutes. The first statute concerns legislative

policies prompting juvenile detention. The fixing of penalties for criminal offenses is a legislative function. *In re Personal Restraint of Forcha-Williams*, 200 Wn.2d 581, 591, 520 P.3d 939 (2022). RCW 13.40.010(2) declares:

> It is the intent of the legislature that a system capable of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders and their victims, as defined by this chapter, be established. It is the further intent of the legislature that youth, in turn, be held accountable for their offenses and that communities, families, and the juvenile courts carry out their functions consistent with this intent. To effectuate these policies, the legislature declares the following to be *equally important* purposes of this chapter:

> (a) Protect the citizenry from criminal behavior;
> . . . .
> (c) Make the juvenile offender accountable for his or her criminal behavior;
> (d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender;
> . . . .
> (f) Provide for the rehabilitation and reintegration of juvenile offenders;
> (g) Provide necessary treatment, supervision, and custody for juvenile offenders;
> (h) Provide for the handling of juvenile offenders by communities whenever consistent with public safety;
> . . . .
> (k) Provide for a clear policy to determine what types of offenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts, institutions, and community services;
> . . . .
> and
> (m) Encourage the parents, guardian, or custodian of the juvenile to actively participate in the juvenile justice process.

(Emphasis added.)  Despite the statute's mention of punishment, punishment of the

so-called delinquent child does not form the primary purpose of the laws relating to

minors.  *State ex rel. Pulakis v. Superior Court*, 14 Wn.2d 507, 522, 128 P.2d 649 (1942);

*In re Welfare of Burtts*, 12 Wn. App. 564, 567, 530 P.2d 709 (1975).

The second and third statutes recognize the Washington Supreme Court's primacy

with regard to procedure.  The first sentence of RCW 2.04.190 proclaims:

> The *supreme court shall have the power to prescribe*, from time to
> time, the forms of writs and all other process, the mode and manner of
> framing and filing proceedings and pleadings; *of giving notice and serving
> writs and process of all kinds*; of taking and obtaining evidence; of *drawing
> up*, *entering and enrolling orders* and judgments; and generally *to regulate
> and prescribe by rule the forms for and the kind and character of the entire
> pleading, practice and procedure to be used in all suits,* actions, appeals
> and proceedings of whatever nature by the supreme court, superior courts,
> and district courts of the state.

(Emphasis added.)  The majority ignores RCW 2.04.190.  The statute references

serving writs and drawing up, entering, and enrolling orders.  This language implies

that the legislature, assuming it has the authority to determine when to issue warrants

for violation of court orders, has delegated that authority to the court.  RCW 2.04.190's

companion statute, RCW 2.04.200, reads:

> When and as the *rules of courts herein authorized* shall be
> promulgated all laws in conflict therewith shall be and become of no
> further force or effect.

(Emphasis added.)

In light of RCW 2.04.190, I supply definitions for some terms used in the statute and other words related to those terms. Black's Law Dictionary's definition for "'legal process'" includes "'a summons, writ, warrant, mandate, or other process issuing from a court.'" *State v. Duffey*, 97 Wn. App. 33, 40, 981 P.2d 1 (1999) (quoting BLACK'S LAW DICTIONARY 1205 (6th ed. 1990)); see also BLACK'S LAW DICTIONARY 1076, 1458 (11th ed. 2019). This same dictionary defines "writ" as "a court's written order, in the name of a state or other competent legal authority, commanding the addressee to do or refrain from doing some specified act." BLACK'S LAW DICTIONARY 1927 (11th ed. 2019). "Warrant" is "[a] writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure." BLACK'S LAW DICTIONARY 1900 (11th ed. 2019). "Arrest warrant" is "a warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody. — Also termed *warrant of arrest.*" BLACK'S LAW DICTIONARY 1900 (11th ed. 2019). The dictionary defines "bench warrant" as "[a] writ issued directly by a judge to a law-enforcement officer, esp. for the arrest of a person who has been held in contempt, has been indicted, has disobeyed a subpoena, or has failed to appear for a hearing or trial." BLACK'S LAW DICTIONARY 1900 (11th ed. 2019). All of these definitions lead to the conclusion that the Supreme Court, not the legislature, issues rules guiding the process of arresting a juvenile who fails to appear or disobeys a court order.

8

I move now to a discussion of the separation of powers doctrine, the appeal's governing dogma. The Washington State Constitution does not contain a formal separation of powers clause, but the division of government into branches has been presumed throughout our history. *Hanson v. Carmona*, 1 Wn.3d 362, 387, 525 P.3d 940 (2023). The separation of powers is implicit in our state constitution and arises from the division of our government into different branches. *State v. Gresham*, 173 Wn.2d 405, 428, 269 P.3d 207 (2012); *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). The branches are not hermetically sealed into discrete jars, but must remain partially intertwined. *State v. Gresham*, 173 Wn.2d 405, 428 (2012). The separation of powers doctrine serves two principal purposes: to accomplish functional separation of the branches and to afford defensive checks, balances, and weapons for departmental self preservation. *In re Salary of Juvenile Director*, 87 Wn.2d 232, 237-38, 552 P.2d 163 (1976). The division of governmental authority into separate branches is especially important within the criminal justice system, given the substantial liberty interests at stake. *State v. Rice*, 174 Wn.2d 884, 901, 279 P.3d 849 (2012).

Most Washingtonians recognize the fundamental functions of each of the three branches: the legislative, executive, and judicial. The legislative branch writes laws, WASH. CONST. art. II, § 1; the executive branch faithfully executes those laws, WASH. CONST. art. III, § 5; and it is emphatically the province and duty of the judicial department to say what the law is, WASH. CONST. art. IV, § 1. *Marbury v. Madison*,

5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803); *Colvin v. Inslee*, 195 Wn.2d 879, 891, 467 P.3d 953 (2020).

The judicial branch performs more tasks than interpreting law. Other fundamental functions rest within the inherent power of the judicial branch, including the power to promulgate rules for court practice. *Hanson v. Carmona*, 1 Wn.3d 362, 388 (2023). In addition to authority granted by the constitution and statute, the Supreme Court possesses inherent power to prescribe rules for procedure and practice. *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974). This power flows from article IV, section 1 of the Washington State Constitution. *State v. Gresham*, 173 Wn.2d 405, 428 (2012); *State v. Fields*, 85 Wn.2d 126, 129, 530 P.2d 284 (1975). The legislature recognized this power in RCW 2.04.190 and RCW 2.04.200.

Because of a lack of definitive boundaries between the three coequal branches, a twilight zone of intermingling conduct exists. One branch of government may engage in functions that intervene in, or overlap with, the functions of another branch, so long as the former does not undermine the operation of that other branch. *In re Mowery*, 141 Wn. App. 263, 281, 169 P.3d 835 (2007).

In conformance with this principle, the legislature also has the power to create rules governing court procedure. If a conflict arises between a court rule and a statute, the court should first attempt to harmonize the rules. *State v. Gresham*, 173 Wn.2d 405, 428-29 (2012). But when the rules cannot be harmonized, the court rule prevails in

10

procedural matters, and the statute prevails in substantive matters. *State v. Gresham*, 173 Wn.2d 405, 429 (2012).

No Cascade Curtain demarcates the procedural from the substantive. *State v. Templeton*, 148 Wn.2d 193, 213, 59 P.3d 632 (2002). Still the law provides some guidance. Substantive law prescribes norms for societal conduct and punishments for violations thereof. *State v. Templeton*, 148 Wn.2d 193, 213 (2002). It creates, defines, and regulates primary rights. *State v. Templeton*, 148 Wn.2d 193, 213 (2002). In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated. *State v. Templeton*, 148 Wn.2d 193, 213 (2002). The procedures to effectuate a right remain procedural law. *Putman v. Wenatchee Valley Medical Center, PS*, 166 Wn.2d 974, 985, 216 P.3d 374 (2009).

Procedure encompasses the criminal process comprising the issuance of a search warrant. *State v. Fields*, 85 Wn.2d 126, 129 (1975). This conclusion flows from the definition of legal process. *State v. Fields*, 85 Wn.2d 126, 129 (1975). The term "legal process" in its broadest sense equates to procedure and embraces any form of order, writ, summons, or notice given by authority of law for the purpose of acquiring jurisdiction of a person or bringing him or her into court to answer. *State v. Fields*, 85 Wn.2d 126, 129 (1975). "Process" is equivalent to procedure and may include all steps and proceedings in a cause from its commencement to its conclusion. *State v. Fields*, 85 Wn.2d 126, 129

11

(1975). Release from custody and the power to hold an accused have traditionally been functions of the judicial branch of government. *State v. Smith*, 84 Wn.2d 498, 501-02 (1974).

Enforcement of court orders is procedural in nature. *In re Interest of F.B.*, 206 Ill. App. (3d) 140, 152, 564 N.E.2d 173, 151 Ill. Dec. 196 (1990). A court possesses inherent power to enforce its orders. *In re Interest of F.B.*, 206 Ill. App. (3d) 140, 152 (1990). This inherent power should enable the courts to enforce orders as the courts deems fit.

The State concedes that oftentimes rules governing how or whether a defendant will be taken into custody are procedural. The State does not identify these recognized procedural rules or explain when procedural rules pass a line into substantive law. Neither the State nor the majority offer an answer as to the extent a rule must interfere in punishment of children for crimes or substantive law before crossing the Rubicon.

I now review Washington decisions that examine the separation of powers doctrine. The case closest in "substance" is *State v. Fields*, 85 Wn.2d 126 (1975), where the State had appealed an order quashing a search warrant and suppressing evidence obtained pursuant thereto. The State charged Robert Fields with violating former RCW 9.68.010 (1969), later repealed by Laws of 1982, chapter 184, section 11, which had designated the exhibition of certain obscene materials to be a gross misdemeanor. The search warrant had been issued under authority of CrR 2.3(b),

that authorized a warrant to search for and seize evidence of a crime. RCW 10.79.015

limited search warrants to the investigation of felonies. CrR 2.3(b) expanded the grounds

for issuance to all crimes, including misdemeanors. The trial court concluded that the

subject matter related to substantive law rather than procedure and was thus beyond this

court's rule-making power. Thus, the trial court ruled the statute controlled, and the

search warrant was void.

The appeal to the Supreme Court in *State v. Fields*, according to the Court,

thrusted it into the procedure versus substantive law dichotomy. The Supreme Court

held that the issuance of a search warrant involved a matter of procedure. The court,

therefore, upheld the use of court rules to enlarge the class of crimes for which the

superior court may issue search warrants.

I discern no germane distinction between a search warrant and an arrest warrant

for purposes of the Supreme Court's power to adopt governing rules. One cannot classify

a search warrant as falling inside the category of procedure, but an arrest warrant

tumbling outside and into the category of substance. As noticed in *State v. Fields*, a

search warrant functions as a court order that authorizes an officer to take property into

custody. The arrest warrant is a court order directing the officer to take a person into

custody. No court has drawn a distinction between a search warrant and an arrest or

bench warrant for the purpose of determining whether or not a warrant constitutes

process. The legislature may choose what conduct is criminal and for how long one

13

should sit in prison after a conviction of a crime, but the courts hold the power to decide who should sit in prison for violating one of its orders or failure to appear at a hearing. All of those judicial actions fall within the legal process.

In *State v. Thomas*, 121 Wn.2d 504, 851 P.2d 673 (1993), the Supreme Court resolved whether RCW 69.50.509 prevailed over CrR 2.3. The statute listed procedures regarding investigating those handling controlled substances, whereas the court rule prescribed procedures for searches and seizures in general. The statute demanded execution and return of a search warrant for controlled substances within three days. The rule required execution of the warrant within ten days and the return within three days of the warrant's execution. Evidence would have been suppressed if the statute controlled. The defendant employed the rule that a specific legal provision controls over a general provision. Therefore, according to the defendant, the statute, which applied narrowly to prosecutions for controlled substances, enjoyed priority over the rule that applied broadly and to all crimes. The court disagreed since the issuance of warrants involves procedure.

In *State v. Smith*, 84 Wn.2d 498 (1974), the Washington Supreme Court faced a conflict between RCW 10.73.040 and CrR 3.2(h). The statute directed the superior court to determine an amount of bail required to release one convicted of a crime who filed an appeal. The court rule demanded that the superior court release one convicted of a crime, who is either awaiting sentence or who has appealed, unless the court finds that the defendant may flee the state or pose a substantial risk of flight or danger. The State

14

argued that the rule created a substantive right outside the court's rule-making powers. The Supreme Court did not expressly declare RCW 10.73.040 void, perhaps because the statute and the rule were not always irreconcilable, but the court ruled the superior court correctly followed the court rule by releasing the defendant pending appeal. The court commented that the fixing of bail and the release from custody traditionally have been functions of the judicial branch of government. The Supreme Court reluctantly mentioned, for fear of conceding too much, that the legislature had assigned these functions to the courts under RCW 2.04.190 and RCW 2.04.200, although the courts needed no delegation. Ordering one into custody operates as the reverse side of the procedural coin.

In *State v. Templeton*, 148 Wn.2d 193 (2002), the State challenged CrRLJ 3.1, by questioning whether the rule was a proper exercise of this court's rule-making authority. The rule addressed the right to counsel and the stages at which law enforcement must advise the juvenile of this right. The State argued that the rule, which governed practices and procedures of police authorities and not those of the courts, violated the separation of powers doctrine. The Supreme Court disagreed. Advisement of the right to counsel falls under the rubric of the legal process. A nexus between the rule and the court's rule-making authority over procedural matters validated the court rule, despite possible discrepancies between the rule and legislation.

In *State v. Gresham*, 173 Wn.2d 405 (2012), the Supreme Court held unconstitutional former RCW 10.58.090 (2008), which rendered admissible some evidence that ER 404(b) rendered inadmissible. The statute rendered admissible, in a prosecution for a sex offense, evidence of Michael Gresham's commission of another sex offense notwithstanding the terms of ER 404(b), assuming admissibility under ER 403. The statute allowed admittance of evidence of earlier uncharged sex crimes. The high court agreed that the statute breached the separation of powers doctrine under which the high court held primacy in adopting evidence rules. The court thereby reversed one of Gresham's four convictions for child molestation and his life sentence.

The primacy of ER 404(b) over former RCW 10.58.090 will lead to some rapists to avoid conviction and punishment. The Supreme Court, in *State v. Gresham*, did not ponder this thought.

In *In re Detention of Lane*, 182 Wn. App. 848 (2014), this court declared RCW 71.34.740(9) unconstitutional. The statute provided that the rules of evidence were inapplicable in some commitment hearings for minors. The statute irreconcilably conflicted with court rules.

I next evaluate three persuasive decisions. In *City of Birmingham v. 48th District Court Judge*, 76 Mich. App. 33, 255 N.W.2d 760 (1977), the Michigan appellate court addressed the opposite situation from A.M.W.'s appeal. A Michigan statute removed from the judiciary the power to refuse the issuance of an arrest warrant in certain cases.

The court invalidated in part the statute as infringing on the court's prerogative to establish procedural rules. Iris Schlesinger had failed to appear in district court to answer a parking ticket, and the city requested an arrest warrant for her failure to appear or pay the ticket. The district court denied the request, and the appellate court affirmed. The higher court held that the legislature could not dictate the remedy for a failure to appear.

In *People v. Johnston*, 67 Misc. 3d 267, 121 N.Y.S.3d 836, 2020 N.Y. Slip Op. 20024 (City Ct. of Cohoes 2020), the New York court declared unconstitutional a statute that required a court to deny bail to certain offenders. According to the court, the statute violated the separation of powers doctrine by improperly interfering with the judiciary's capacity to fulfill its constitutional mandate to properly and efficiently administer justice.

The Florida Supreme Court addressed the separation of powers doctrine in the context of a court rule in *State v. Raymond*, 906 So.2d 1045 (Fla. 2005). A Florida statute denied the court the prerogative of granting nonmonetary pretrial release when the State charged the accused with a dangerous crime. The Florida Supreme Court invalidated the statute as infringing on the powers granted to the courts despite the purpose of the statute seeking to protect the safety of the public. The separation of powers doctrine bestowed on the court jurisdiction to adopt rules addressing practice and procedure, and release from custody entailed procedure. According to the court:

> The terms practice and procedure "encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion.

17

> 'Practice and procedure' may be described as the machinery of the
> judicial process as opposed to the product thereof."

*State v. Raymond*, 906 So.2d at 1048 (citations omitted).

Returning to Washington State, JuCR 7.16 and RCW 13.40.040 involve summoning the juvenile to court for the purposes of adjudication. JuCR 7.16 does not address primary rights or substance. It does not impact sentencing. The court rule only involves pretrial procedure and enforcement of court orders. Arresting and summoning an accused to court falls under the definition of a "writ," the handling of which RCW 2.04.190 declares to be part of the legal process and under the jurisdiction of the courts. A bench or arrest warrant constitutes orders also within the meaning of RCW 2.04.190.

The incarceration of A.M.W. arises from her failure to abide by a disposition order. Thus, any incarceration results from contempt of a court order. The United States Supreme Court recognizes that the constitutional structure of the three branches of government particularly assigns to the courts the prerogative of punishing disobedience of its orders and such assignment does not threaten the integrity or invade the prerogative of the executive or legislative branches. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987).

The majority rests its decision primarily on anxiety that JuCR 7.16 obstructs the enforcement of the legislative policies and statutes found in the Juvenile Justice Act of

1977 (the Act), chapter 13.40 RCW. I agree partially with the majority that JuCR 7.16 may interfere with punishment the legislature intended under chapter 13.40 RCW. The tone of the majority opinion, however, suggests that the court rule completely frustrates and renders RCW 13.40.040, if not the entirety of chapter 13.40 RCW, totally ineffective. The majority frets that JuCR 7.16 reduces the Act to a voluntary system for all but the most serious offenders. The majority characterizes JuCR 7.16 as an effort to curtail the use of incarceration as a penalty for juvenile offenders.

Nonecclesiastical law does not recognize the doctrine of transubstantiation. The majority cites no decision that establishes the notion that a procedural rule transmogrifies into a substantive rule if the procedural rule interferes with substantive law or the purpose behind the substantive law. The State cites no such decision. Neither the State nor the majority suggest to what extent the procedural rule must interfere with application of a statute before the rule turns into a proscribed pumpkin.

A Pennsylvania court preached against a court shrinking from applying its procedural rules because of the rules' impact on the substantive law:

> We certainly do not intend to, and will not, promulgate rules in contravention of the constitutional prohibition against abridging, enlarging or modifying substantive rights. However, to interpret this provision too narrowly effects an equally offensive circumscription of our constitutional duties. As we have stated previously, the legislature is forbidden to act in the field of procedure; we are bound to do so by the terms of our authority. This Court should not be prevented from exercising its duty to resolve procedural questions merely because of a collateral effect on a substantive right.

19

*Yackobovitz v. Southeastern Pennsylvania Transportation Authority*, 139 Pa.Cmwlth. 157, 590 A.2d 40, 49-50 (1991).

Although JuCR 7.16 limits when a juvenile court may incarcerate an offender who fails to appear or who violates a court order, the rule does not change the punishment imposed for violation of the substantive law. Upon a conviction, the court may still order the juvenile to detention. Furthermore, the rule does not preclude the juvenile court from detaining a juvenile upon arrest for reasons other than his or her posing a serious threat to public safety. In this light, JuCR 7.16 could boomerang and harm the accused because the juvenile court may be reluctant to release the accused on arrest for fear that the juvenile may never voluntarily appear later.

The juvenile court, under JuCR 7.16, may eventually still imprison juveniles, who fail to appear or disobey an order, who pose "a serious threat to public safety." JuCR 7.16(a), (b). No one has performed any statistical analysis as to what percentage of juvenile offenders pose a serious threat and what percentage pose a modest or no threat to community safety.

Many, if not most procedural rules, precipitate substantive consequences. The exclusionary rule for law enforcement violations of constitutional rights afforded for search and seizures allows many criminals to escape judgment and punishment. A court applies the exclusionary rule even for heinous crimes such as treason, murder, and rape.

Nevertheless, no court has declared the exclusionary rule unconstitutional because it thwarts legislative policy demanding punishment for a crime. One may protest that the exclusionary rule is based on the constitution such that it must control over a conflicting statute, but no constitutional provision requires the rule's employment. Numerous exceptions, including the good faith exception and the impeachment exception, confirm the exclusionary rule is court created, not constitutionally created. *United States v. Leon*, 468 U.S. 897, 910, 915, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

The Washington Supreme Court adopted CrR 3.3 that prescribes rigid speedy trial regulations that exceed the restrictions of the constitution's speedy trial rule. We regularly apply the court rule to the end of dismissing serious crimes, including rape and immoral communication with a minor. *State v. Thomas*, No. 38569-8-III (Wash. Ct. App. Mar. 23, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/385698_unp.pdf; *State v. Denton*, 23 Wn. App. 2d 437, 516 P.3d 422 (2022). No one argues that CrR 3.3 violates separation of powers by intruding on the prerogative of the legislature to punish crimes.

To repeat, in *State v. Gresham*, 173 Wn.2d 405 (2012), the Supreme Court held unconstitutional former RCW 10.58.090, which rendered admissible some evidence that ER 404(b) rendered inadmissible. The primacy of ER 404(b) over RCW 10.58.090 will cause some rapists to avoid conviction and punishment. The Supreme Court, in *State v. Gresham*, did not ponder this thought. To repeat, in *City of Birmingham v. 48th District*

21

*Court Judge*, 76 Mich. App. 33 (1977), the Michigan appellate court voided a state statute that removed from the judiciary the power to refuse the issuance of an arrest warrant in certain cases. The appeals court did not worry that no one thereafter might ever pay another parking ticket.

One will argue that the exclusionary rule, CrR 3.3, ER 404(b), and other court rules requiring or leading to dismissal of charges, do not result in wholesale evasion of legislative prescribed punishments. But JuCR 7.16 does also not result in wholesale evasion of punishment. I already listed circumstances, during which the juvenile court may successfully detain an offender. Although A.M.W. may avoid detention, we have no measurements as to how many others will evade incarceration or punishment.

Those who avoid punishment by reason of the exclusionary rule, CrR 3.3, ER 404(b), and other court rules include dangerous adults, not merely children. No one measures the number of offenders escaping incarceration by reason of the evidence rules or the speedy trial rule. No one measures the harm caused by the release of dangerous adults because of a court rule, as opposed to harm caused by releasing a juvenile offender.

This appeal does not demand that this court assume the task of evaluating policy and practical considerations behind detention of juveniles, so I do not extensively analyze the pros and cons of detention. Nevertheless, the majority writes: "Those of us who have worked in therapeutic courts know that a court's authority to quickly bring someone into

court who is on the verge of catastrophic drug use or criminal activity can have a beneficial, life-changing impact." Majority at 20. Many professionals, including defense counsel, would challenge this statement. The majority may be able to give a few examples of such success, but a wealth of literature supports a conclusion that incarceration, in the overwhelming number of instances, harms the juvenile. MANFRED NOWAK, THE UNITED NATIONS GLOBAL STUDY ON CHILDREN DEPRIVED OF LIBERTY (Nov. 2019), https://omnibook.com/global-study-2019/liberty/page-001.html [https://perma.cc/2FGD-KNMA]; DELAWARE CRIMINAL JUSTICE COUNCIL, JUVENILE RECIDIVISM IN DELAWARE: AN ANALYSIS OF YOUTH RELEASED IN 2012 THROUGH 2016 (Aug. 2018), https://sac.delaware.gov/wp-content/uploads/sites/64/2018/11/ juvrecidreport15n16FINAL-2.pdf [https://perma.cc/94BU-QEPU]; *See* Kids Count Data Ctr., *Youth Residing in Juvenile Detention, Correctional and/or Residential Facilities in the United States,* ANNIE E. CASEY FOUND. (last updated Jan. 2024), https://datacenter.aecf.org/data/tables/42-youth-residing-in-juvenile-detention-correctional-and-or-residential-facilities; PENAL REFORM INT'L, GLOBAL PRISON TRENDS 2022, at 22 (May 2022), https://cdn.penalreform.org/wp-content/uploads/2022/05/GPT2022.pdf [https://perma.cc/K5LQ-YL9E]; ANNIE E. CASEY FOUND., NO PLACE FOR KIDS: THE CASE FOR REDUCING JUVENILE INCARCERATION 3 (2011), https://assets.aecf.org/m/resourcedoc/aecf-NoPlaceForKidsFullReport-2011.pdf [https://perma.cc/U6KF-XMVW]; The Task Force 2.0 Juv. Just. Subcomm., *Race in*

No. 39113-2-III
*State v. A.M.W.* (Dissent)

*Washington's Juvenile Legal System: 2021 Report to the Washington Supreme Court*, 57 GONZ. L. REV. 636, 689, 692 (2021); ANNIE E. CASEY FOUND., YOUTH INCARCERATION IN THE UNITED STATES 2 (Dec. 2021), https://assets.aecf.org/m/resourcedoc/aecf-youthIncarcerationinfographic-2021.pdf [https://perma.cc/K4Z9-CTTZ]; Beth Caldwell, *Shifting the Paradigm: An Abolitionist Analysis of the Recent Juvenile Justice "Revolution,"* 23 NEV. L.J. 115, 158-59 (2022); Nancy E. Dowd, *Black Lives Matter: Trayvon Martin, the Abolition of Juvenile Justice and #BlackYouthMatter*, 31 U. FLA. J.L. & PUB. POL'Y 43, 44-46 (2020). The majority cites many of these studies. The Supreme Court relied on some of the studies and literature when exercising its prerogative to establish JuCR 7.16.

I recognize the need for assistance for juveniles undergoing suicidal thoughts, suffering from addictions, posing a threat to themselves and others, facing homelessness, encountering peer pressure and gang influence, experiencing a parasitic and abusive relationship, and lacking control by parents. Opponents of JuCR 7.16 supply many tragic stories purportedly resulting from application of the rule. *In re Mowery*, 141 Wn. App. 263 (2007), presents an example of a desperate parent seeking a son's detention for extreme behavior. But parents and society should not employ criminal process and incarceration as the cure for these tragic circumstances. Hospitals and treatment facilities, not incarceration, should be the location for such children. The failure to address the underlying problems and stressors that lead to dangerous behavior is

24

compounded by punishing the young people. *In re Dependency of A.K.*, 162 Wn.2d 632, 655 (2007) (Madsen, J., concurring).

A juvenile court has other avenues for attending to the needs of juveniles who pose danger to themselves and others. The parents may seek relief and the court may harness the Family Reconciliation Act, chapter 13.32A RCW, sometimes referred to as the "'Becca bill,'" RCW 13.32A.010, or "'Becca Too' bill," RCW 13.32A.197. Chapter 13.32A RCW authorizes petitions for child in need of services and at risk youth and assistance under the programs. Chapter 71.34 RCW affords mental health services for minors, including involuntary commitment proceedings.

When concerned about serious violent offenders, the court may seek removal to adult court. RCW 13.40.110. The State often employs this transfer option. JuCR 7.16 does not apply in adult court.

The legislature in the last ten years has recognized the ineffectiveness, if not harm, in incarcerating juvenile offenders. As noted by the majority, the Washington Legislature has expanded the scope of juvenile diversion. See LAWS OF 2013, ch. 179 § 3; LAWS OF 2018, ch. 82 § 1. In 2017, the state legislature repealed mandatory arrest for juveniles accused of domestic violence. LAWS OF 2017, ch. 223. Finally, in 2019, the legislature limited judicial authority to incarcerate youth in nonoffender juvenile court proceedings. LAWS OF 2019, ch. 312. If anything, JuCR 7.16 conforms to recent legislative action.

CONCLUSION

I would uphold the validity of JuCR 7.16 and apply the rule when it conflicts with

RCW 13.40.040.

I dissent:

Fearing, J.

_____
Fearing, C.J.